C. H. MILLER et al. v. THE CITY OF ASHEVILLE.

(DEFENDANT'S APPEAL).

*Municipal Corporations—Condemnation of Land for Streets— Diverse Owners — Life Estate—Remainder—Reference to Determine Value and Respective Interest of Owners.*

1. Where, in the trial of an appeal from an assessment of damages in condemnation proceedings instituted by a city for widening a street, a map of the plan of the city had been introduced at the beginning of the trial without objection and used by other witnesses in explaining their testimony, it was not error to permit a subsequent witness to testify in regard to such map.

2. In a trial of an action wherein plaintiff sought damages for land condemned by a defendant city the defendant, having admitted that plaintiffs' ancestor died seized in fee-simple of the land condemned; that his will, which was in evidence without objection, had been construed by the Supreme Court as devising the land in question for life to one of the plaintiffs, and that the other plaintiffs were her children, and having itself instituted the proceedings against the plaintiffs for condemnation of the land, was estopped to deny that the title to the land was in the plaintiffs or some of them.

3. Although parties who are entitled to land by way of contingent remainder may not sell the same for partition because their respective shares therein cannot be ascertained until the happening of the contingency, yet such property may be taken in the exercise of eminent domain by the sovereign or the one to whom it delegates that right, and the fund awarded as damages will be substituted for the realty, and upon the happening of the contingency will be divided among the parties entitled in the same manner as the realty would have been if left intact; therefore

4. Where, in the trial of a suit relating to damages for land condemned by defendant city and belonging to one of the plaintiffs for life and to the others by way of contingent remainder, the jury assessed the totality of damages due by the defendant to the plaintiffs, the defendant has no concern as to the division of the fund and cannot object to an order of reference to ascertain how, and in what proportions, the plaintiffs are entitled thereto.

5. Where land had been condemned in 1887 for widening a street, and the house thereon was torn down in 1890, and in the meantime rented by the owners, it was proper, on the trial of a suit relating to the damages for such condemnation, to instruct the jury that they should allow interest on such sum as they might assess as damages from the time of the condemnation, but should take into consideration the use made of and benefit received by the plaintiffs from the land after such date, against the damages.

6. After proceedings for the condemnation of land by the City of Asheville were begun, but before the trial and verdict assessing damages therefor, chapter 135, Private Acts of 1891, was passed, section 16 of which provided that in condemnation proceedings all benefits to the owner shall be considered: *Held*, that such act was merely a change of remedy and is valid, and it was error in the Court below to instruct the jury that the benefits assessed must be only " those which are special to the owner and not such as he shares in common with other persons."

CIVIL ACTION, tried before *Merrimon, J.*, and a jury, at August Term, 1891, of BUNCOMBE Superior Court.

The City of Asheville instituted two proceedings, each against the plaintiffs, under the provisions of the charter of the defendant, the City of Asheville, being chapter 3, Acts of 1883, and acts amendatory thereof, for the purpose of condemning certain lands for the purpose of widening North Main street and Pulliam street in said city, and the reports of the juries summoned for such purposes were duly confirmed and approved by the Mayor and Board of Aldermen of the defendant, the said City of Asheville.

Each of said proceedings was thereafter brought upon appeal by the plaintiffs, under the provisions of the said charter of the defendant, to the Superior Court, and at the March Term, 1891, the said two proceedings were consolidated by consent.

Upon the trial the following issues were submitted :

1. What damages, if any, have been done to the property by the proposed improvements of Main and Pulliam streets?

2. What special benefit, advantage and enhanced value have been caused to the property by the proposed improvement?

C. H. Miller, one of the plaintiffs, was introduced as a witness and was allowed to testify that the street to be widened was originally twenty-four feet wide from end to end; that Main street front of entire property was three hundred and eighty-four feet, which gave fifteen building lots of twenty-five feet front each and nine feet over; that the sixteen feet taken off of it to widen said street, if it had been left on, would have left Main street with four hundred feet front and given sixteen building lots of twenty-five feet each; that the effect of taking off the sixteen feet was to destroy one building lot of twenty-five feet fronting on Main street, leaving only nine feet; that the plan for improving the place was adopted before the sixteen feet was condemned by the city. There was a map showing how the entire lot had been surveyed and divided into building lots. It had been introduced at the beginning of the trial without objection and used by the witnesses who had testified previous to this witness.

The defendant objected to this testimony before the same was admitted. Objection overruled. Exception by the defendant.

The defendant introduced in evidence the will of J. M. Smith, as regularly probated and recorded, and admitted that James M. Smith died seized in fee-simple of the land; that the property was devised to his daughter, Elizabeth Smith, for life; that the plaintiffs, Lula R. Miller, John Henry Gudger and Mrs. Stepp, were her children, and that the will of James M. Smith had been construed in the case of C. H. Miller *ex-parte*, 90 N. C., 625.

The defendant asked his Honor to charge the jury as follows:

3. That the other plaintiffs (C. H. Miller, Lula R. Miller, his wife, John Henry Gudger, and the heirs at law of Mrs. Stepp, by their guardian, C. H. Miller) have shown no title to the land.

4. That according to the evidence the jury could estimate no damages except to the life estate of Mrs. Smith.

5. That there is no evidence as to Mrs. Smith's age and no evidence by which to aid the jury in estimating the value of or damage to the said Mrs. Smith's life estate.

6. That the burden and duty of showing what the life estate of Mrs. Smith is rests upon the plaintiffs, and that if she or they have failed to show you such evidence as to enable you to estimate the value of her life estate, then you cannot estimate it and cannot ascertain the damages nor give any to her for the taking of said land.

7. That none of the plaintiffs are entitled to recover any damages in this cause.

8. That in considering damages in this case the rents received by the plaintiffs from the condemnation in 1887 till the house was torn away in 1890 should be an offset against said damages, if you should find there have been any such.

His Honor declined to charge the jury as requested by the defendant, and the defendant excepted, but instructed the jury that they should allow interest upon such sum as they assessed as damages to the property, if they assessed any, but should also take into consideration the use made of and the benefit received by plaintiffs from the land after it was condemned against the damages.

His Honor charged the jury as follows, among other things: "And must be for those benefits only which are special to the owner, and not such as he shares in common with other persons." The defendant excepted.

The Court, at request of defendant city, charged the jury: "That it appeared from the evidence that the land taken by defendant is a small portion of a large and considerable block or tract of land, and that, therefore, in estimating the damages, you must take into your consideration the whole tract or block, and not confine yourselves to the value of the land actually taken, and say what the damage to the whole block is by such taking; that the value of the land taken is not the measure of damage."

The jury responded to the issues submitted as follows: To the first, $3,900; to the second, $2,400.

His Honor thereupon made an order in the case against the objection of defendant, referring the same to Reuben McBrayer, Esq., to ascertain and report:

"1. What is the true condition of the title of the said land?

"2. What portion of the said fifteen hundred ($1,500) dollars shall be paid to the said Elizabeth A. Smith, the life tenant?

"3. Who and in what proportions are entitled to the remainder of said fifteen hundred dollars?

"4. Any other information pertinent to the question to how said moneys shall be paid out.".

The report of the referee was as follows:

"1. As to the first proposition I find that Mrs. Elizabeth A. Smith is the owner of a life estate in said land, under the will of James M. Smith, her father, made in 1856, and proved at July Term, 1856, of Buncombe County Court, the clause relating to the land in controversy being as follows: 'To Elizabeth A., wife of J. H. Gudger (now Elizabeth A. Smith), to her sole and separate use and benefit, for and during her natural life, with remainder to such children as she may leave her surviving and those representing the interest of any that may die leaving children,'

and the plaintiffs Lula R. Miller, wife of C. H. Miller, and J. H. Gudger are the two children, and only ones now living, of the said Elizabeth A. Smith, the life tenant, and plaintiffs Lula R., Hattie C. and Mary E. Stepp, minors, are the only surviving children of Polly R., the other child of the life tenant, Mrs. Elizabeth A. Smith, but I find that the remainder as made in said will is not a vested but a contingent remainder, and I cannot, therefore, now say, during the continuance of the life estate, what interest the plaintiffs, other than Elizabeth A. Smith, have in said land.

"2. I find, in answer to the second proposition, that Mrs. Elizabeth A. Smith, the life tenant, is now sixty-two years old, and in good health, and that her life estate in said $1,500 is worth in cash seven hundred and eighty-seven and $\frac{63}{100}$ dollars, her expectancy of life, under the mortuary table as set forth in Vol. I of *The Code* of North Carolina, §1352, being twelve years and nine months.

"3. The third proposition I cannot answer more fully than it is answered in first answer above; that is to say, that under the will the remainder being a contingent one, it cannot be ascertained during the life of Mrs. Smith how the remainder of the $1,500 shall be divided, and to whom it shall be paid.

"4. In answer to the fourth proposition referred the referee begs to suggest to the Court that, in his opinion, the difficulty as to the distribution and ownership of the $1,500 recovered might be obviated by the Court making an order placing the $1,500 in the hands of the Clerk or some other person appointed by the Court for that purpose, and in said order allowing the life tenant, Mrs. Elizabeth A. Smith, the interest on same, to be paid annually during her life, and the principal to be divided at her death, when the owners thereof can be ascertained."

The defendant excepted to the report of the referee, without waiving previous exceptions to the reference itself, upon the following grounds:

"That the referee erred in finding as conclusion of law or fact that the plaintiff Mrs. E. A. Smith is entitled to recover of the defendant anything as damages to her life estate in the land, because there was no evidence either upon the trial or before the said referee that there was any damage to her life estate.

"That the referee should have found as conclusions of law and fact that neither of the plaintiffs are entitled to recover anything of the defendant.

"That the referee should have rendered judgment in favor of defendant for $2,400, the benefits assessed by the jury, and costs."

The objections of defendant were overruled, and judgment was rendered as follows:

"Upon the issues found by the jury and upon the report of the referee, Reuben McBrayer, Esquire, which report is filed herein, it is now adjudged that the plaintiff Elizabeth A. Smith, is entitled to her life estate in the sum of fifteen hundred dollars and that she have and recover from the City of Asheville the sum of seven hundred and eighty-seven and $\frac{63}{100}$ dollars, with interest thereon from the — day of August, 1891, until paid.

"It is further adjudged that the remainder of said sum of fifteen hundred dollars to-wit, seven hundred and twelve and $\frac{37}{100}$ dollars, be paid by the defendant, the City of Asheville, to J. L. Cathey, Clerk of the Superior Court for Buncombe County, with interest thereon from the — day of August, 1891, until paid.

"It is further adjudged that the said J. L. Cathey, Clerk of this Court, receive the said sum of seven hundred and twelve and $\frac{37}{100}$ dollars and that he invest the same for the

highest legal rate of interest which he may be able to obtain therefor until such time as it shall be determined who may be entitled to the same, when the same, with the accumulated interest thereon, shall be paid to those adjudged to be the owners thereof; to be invested upon bond and real estate mortgage or some other good and sufficient security.

"It is further adjudged that the City of Asheville pay the costs of this proceeding, to be taxed by the Clerk.

"This cause is retained for further directions and until it shall be determined by the Court herein who is entitled to the said sum of seven hundred and twelve and $\frac{37}{100}$ dollars."

From the foregoing judgment defendant appealed.

*Mr. Charles A. Moore,* for plaintiffs.
*Messrs. Cobb & Merrimon,* for defendant (appellant).

CLARK, J.: The first exception of the defendant, which is to the testimony of C. H. Miller in regard to the plan of the city, already in evidence without exception, is without merit.

The defendant having admitted that James M. Smith died seized in fee-simple of the land; that his will, which was in evidence without objection, had been construed in *Miller ex-parte,* 90 N. C., 625, and that the plaintiffs were the testator's daughter and grandchildren, and having itself instituted this proceeding to condemn the land, was estopped to deny that the title to the land was in the plaintiffs or some of them. In what proportion the damages for the land should be divided among the plaintiffs did not concern the defendant. It had no right, therefore, to except to the order of reference made to that end by the Court after verdict. The verdict established the title in plaintiffs and the amount of damages the defendant should pay.

It is true that it was held in the case cited that the real estate devised by Jame M. Smith could not be sold for partition.    But that was between the parties themselves, and on the ground that the remainders being contingent, the parties entitled to share therein could not be ascertained.    But that rule does not apply as between the sovereign, or the party to whom it· delegates the right of eminent domain, and those having an interest in the land—vested or contingent.    When (as here) the property is taken under the right of eminent domain, the fund realized is substituted for the realty and is held subject to like charges and trusts, and when limited over on a contingent remainder it will be divided among the parties entitled upon the happening of the contingency in the same manner as the realty itself would have been if it had remained intact.    If this were not so it would be easy as to the construction of railroads, the opening or widening of streets and in the numerous other instances which, in a progressive community, call for the exercise of the powers of ultimate sovereignty, to defeat the right of eminent domain, by simply limiting or settling property upon a contingent remainder.    It would hamper the exercise of the right if the remainderman could wait till some remote day when the damages would be enhanced by the rise in values.    The jury having assessed the totality of the damages due by the defendant, and that it was due to the plaintiffs, the defendant, as above said, need not concern itself as to the division of the fund or the directions of the Court how the fund or any part thereof shall be held or divided.    The requests from the defendant to charge, numbered three, four, five, six, seven, were properly refused.    The charge substituted for the eighth prayer of defendant was proper.

We are of opinion, however, that there was error in instructing the jury, as requested by the plaintiffs, that the

benefits assessed must be only those "which are special to the owner, and not such as he shares in common with other persons." To this the defendant excepted. The rule laid down by his Honor has been the settled ruling of this Court, but it was expressly altered as to all condemnation proceedings instituted in behalf of the defendant by section 16, ch. 135, Pr. Acts 1891. It is true this was enacted 28th February, 1891, after these proceedings were begun. But the verdict assessing the damages was rendered thereafter, at August Term, 1891. This is merely a change of remedy. Whether the defendant can reduce the damages by all the benefits accruing to the plaintiffs or only by those benefits special to the plaintiffs rests with the sovereign when it confers the exercise of the right of eminent domain. When, after proceedings begun, but before the trial, the Legislature struck out all right to any benefits as an offset, it was held valid. *Railroad* v. *Hall,* 67 Ill., 99. For the same reason the present act, which extends the assessment of benefits to all received by the land owner, instead of a restriction to the special benefits, is valid. All the land owner can claim is that his property shall not be taken for public use without compensation. Compensation is had when the balance is struck between the damages and benefits conferred on him by the act complained of. To that and that alone he has a constitutional and vested right. The Legislature in conferring upon the corporation the exercise of the right of eminent domain can, in its discretion, require all the benefits or a specified part of them, or forbid any of them to be assessed as offsets against the damages. This is a matter which rests in its grace, in which neither party has a vested right, and as to which the Legislature can change its mind always before rights are settled and vested by a verdict and judgment.

This error in no way enters into or affects the verdict upon the first issue.   Therefore, a partial new trial will be awarded as to the verdict upon the second issue only.

Error.