J. B. BARNES, PETITIONER v. THE NORTH CAROLINA STATE HIGHWAY COMMISSION; H. T. BUTTS; HUGH B. BEAL, TRUSTEE; SECURITY NATIONAL BANK OF GREENSBORO; STANDARD OIL COMPANY OF NEW JERSEY; W. O. McGIBONY, TRUSTEE; THE FEDERAL LAND BANK OF COLUMBIA; AND LATTIE D. MATTHEWS, EXECUTRIX OF THE ESTATE OF M. A. MATTHEWS, DECEASED, RESPONDENTS.

(Filed 10 July 1962.)

1. **Eminent Domain § 11—**
   Instructions as to the measure of damages generally for the taking of a part of a tract of land in eminent domain, approved.

2. **Eminent Domain § 2—**
   While just compensation must be paid for the taking of land or any interest or easement appurtenant thereto, where a part of a tract of land is taken for highway purposes, any damages resulting to the remaining land from traffic regulations promulgated in the interest of public safety are restrictions imposed on all members of the public alike in the exer-

cise of the police power, and do not constitute a taking for which compensation must be paid.

**3. Same; Eminent Domain § 5—**

A part of petitioner's land was taken to widen a two-lane highway into a four-lane highway with a median dividing the two northbound and two southbound lanes. *Held:* Any diminution in value of the businesses located on petitioner's remaining land by reason of the fact that there was direct access therefrom to the southbound traffic lanes only, so that northbound traffic had no direct access to such businesses, is not damage for which compensation may be recovered, since such damage results not from the taking of any interest in the land but from a police regulation governing the use of the highway by the public generally.

**4. Same—**

Where the Highway Commission constructs curbing along a highway adjacent to petitioner's land so as to limit access to the land except at definite spaces provided in the curbing, petitioner is entitled to recover compensation to the extent, if any, such curbing substantially impairs free and easy access to his land and the improvements thereon. Such restriction does not constitute the highway a limited access highway within the purview of G.S. 136-89.48, *et seq.*, the right of access to abutting land not being entirely cut off.

**5. Eminent Domain § 11—**

In proceedings to assess compensation for the taking of a part of a tract of land for highway purposes, the court has discretionary power to submit to the jury in addition to the issue of damages resulting from the entire taking, issues as to what portion of the damages should be allocated to leasehold estates held by lessees of the owner, there being no dispute as to the ownership of the leasehold estates or their validity G.S. 40-12, G.S. 40-23.

**6. Same—**

Chapter 1025 of the Session Laws of 1959 does not apply to any taking or causes of action arising prior to 1 July 1960.

APPEAL by respondent State Highway Commission from *Clark, Special Judge,* September 11, 1961 Term of HARNETT.

Special proceeding in accordance with the procedure prescribed by G.S. § 40-11 *et seq.,* as authorized by G.S. § 136-19, to recover compensation for the condemnation by respondent Highway Commission of a permanent easement for highway purposes over 3.17 acres of petitioner's land.

The 3.17 acres is part of petitioner's tract of 21.63 acres in Neill's Creek Township, Harnett County, about one mile north of Lillington. It was appropriated for highway purposes in connection with Project No. 8.14368, which involved the relocation and improvement of U. S. Highway No. 401 at its intersection with N. C. Highway No. 210 and U. S. Highway No. 421.

BARNES *v.* HIGHWAY COMMISSION.

· It was stipulated that "(t)he date of taking was January 1, 1960."

Prior to January 1, 1960, 1.32 acres of petitioner's 21.63-acre tract was subject to a 60-foot right of way previously acquired by the Highway Commission. This 60-foot right of way, on which #401 was then located, separated a triangular area containing 1.36 acres, referred to hereafter as Tract A and located east thereof, from the remaining area of 18.95 acres located west thereof.

In connection with Project No. 8.14368, the Highway Commission appropriated: (1) Tract A, being all of petitioner's land (1.36 acres) east of #401; and (2) Tract B, containing 1.81 acres, consisting of a strip of petitioner's land west of and abutting on #401 and extending at varying widths, in the shape of a crescent, along petitioner's entire frontage (1662.78 feet) on #401. As indicated, all of petitioner's remaining 17.14 acres, after January 1, 1960, is the area west of Tract B.

The map (reproduced herewith), on which the judgment is based, shows (shaded areas) the location of Tracts A and B as of January 1, 1960, and the general location of the buildings on each tract.

Tract A, prior to January 1, 1960, was bounded on all three sides by paved highways. Since all of Tract A was appropriated by the Highway Commission, the questions for decision do not require further explanation as to original location and relocation of highways with reference thereto.

With reference to Tract B: Prior to January 1, 1960, proceeding north or northeast from Lillington, the highway then constituting #401, as it reached petitioner's land, was also #421 and #210; but shortly thereafter #401 diverged from #421 and #210 and curved to the left as indicated on the map. #421 and #210 continued on the original course until reaching and passing Tract A.

On Tract A, when appropriated, there were (1) a store building and adjacent premises theretofore leased by petitioner to respondent Butts, (2) a service station building and premises theretofore leased by petitioner to Standard Oil Company of New Jersey, and (3) a one-story, three-room frame dwelling. The premises covered by the Standard Oil Company lease were subject to a deed of trust to respondent Beal, Trustee, securing an indebtedness of petitioner to respondent Security National Bank of Greensboro.

Prior to January 1, 1960, there were located, west of and fronting on #401 as then located, (1) filling station and bulk oil premises theretofore leased by petitioner to M. A. Matthews, whose executrix is a respondent herein, and (2) premises occupied by a place of business referred to in the evidence as the Frozen Custard Place and indicated on the map by the word "Cafe." A portion thereof, but not the buildings or other improvements thereon, was appropriated by the Highway Commission on January 1, 1960, and is included in Tract B.

Tract B, together with other property, was subject to a deed of trust to respondent McGibony, Trustee, securing an indebtedness of petitioner to respondent Federal Land Bank of Columbia.

Hereafter, we refer to petitioner's remaining property (17.14 acres) as being on the west side of #401 as relocated; and we refer to traffic

from Lillington toward Raleigh on #401 as northbound and to traffic from Raleigh toward Lillington on #401 as southbound.

Prior to January 1, 1960, #401 was a single (two-lane) highway designed and used for northbound and southbound travel. As relocated, #401 is a dual highway, having two lanes exclusively for northbound travel and two lanes exclusively for southbound travel. Petitioner's remaining property (17.14 acres), including the portion subject to the Matthews lease and the portion occupied by the Frozen Custard Place, is west of and abuts on the lanes of #401 as relocated for southbound traffic.

After completion of Project No. 8.14368, proceeding north or northeast from Lillington, the highway now constituting #401, as it reaches petitioner's land, is also #421 and #210; but, after passing a portion of petitioner's land (where the Matthews and Frozen Custard Place premises abut), #401 diverges from #421 and #210 and curves to the left as shown on the map. From Lillington until it reaches "just about to the (north) end of the (petitioner's) property," #401 is a dual highway, the lanes for northbound traffic thereon being separated from the lanes for southbound traffic by a median or divider, with this exception: There is a break or crossover, "just a little bit south of the front of" the Matthews premises, where southbound traffic may turn left, cross over to the lanes for northbound traffic and then proceed north thereon. Northbound traffic may use this crossover but only for the purpose of reaching the lanes for southbound traffic and proceeding south thereon. Petitioner, entering #401 from his abutting property, must proceed south thereon in the lanes reserved exclusively for southbound traffic until he reaches said crossover, at which point he may cross over to the lanes for northbound traffic and proceed north thereon. Where #401 ceases to be a dual highway, "just about to the (north) end of the (petitioner's) property," petitioner may make a left turn, cross over and then proceed south on the lanes reserved exclusively for southbound traffic to any portion of his property abutting thereon. (Note: The foregoing is in accord with the evidence when taken in the light most favorable to petitioner.)

It was stipulated that the special interests and rights of respondents Beal, Trustee, Security National Bank of Greensboro, McGibony, Trustee, Federal Land Bank of Columbia, and Standard Oil Company of New Jersey "are readily determinable and not now in controversy, and these interests shall be transferred from the land to the fund allowed as damages herein, and then apportioned by the Court among the parties as their interests may appear."

Petitioner, after alleging facts as to the nature and extent of the damages he sustained on account of said Project No. 8.14368, asserted

he was entitled to recover $60,000.00 for the appropriation by the Highway Commission of Tract A and $40,000.00 for its appropriation of Tract B.

Respondent Highway Commission, in its answer, denied particular allegations of the petition and thereafter asserted: "respondent does not resist prayer that just compensation be determined according to law by the applicable procedure set forth in Article 2 of Chapter 40 of the General Statutes insofar as the same is made to apply by G.S. 136-19, and respondent prays that benefits, both general and special, be assessed as offsets against the damages, if any, as is provided therein."

Respondents Butts and Matthews, in a joint answer, admitted the allegations of the petition and prayed that the damages to their leasehold interests be assessed.

The remaining respondents did not answer or otherwise plead.

Commissioners appointed by the clerk filed three separate reports, one assessing petitioner's damages at $78,000.00, another assessing the damages of respondent Butts at $20,000.00, and another assessing the damages of the Matthews estate at $13,000.00. The clerk, in separate orders, confirmed each report. In addition, in a separate and final order of confirmation, the clerk ordered, adjudged and decreed "that the interested parties herein have and recover of the N. C. State Highway Commission the total sum of $111,000 and that the costs of this action be taxed to the N. C. State Highway Commission."

At trial, the court submitted, and the jury answered, three issues, to wit:

> "1. What gross sum are the parties in interest entitled to recover of the respondent, N. C. State Highway Commission, for the appropriation and damage to lands of the petitioner described in the petition, over and above all general and special benefits accruing to petitioner's land by reason of the appropriation for highway purposes? ANSWER: $77,000.00.
>
> "2. What part of the above gross sum awarded is the respondent, H. T. Butts, entitled to recover? ANSWER: $13,000.00.
>
> "3. What part of the above gross sum awarded is the respondent, Lattie D. Matthews, Executrix of the Estate of M. A. Matthews, Deceased, entitled to recover? ANSWER: $5,000.00."

The Highway Commission contended only the first issue should have been submitted and objected and excepted to the submission of the second and third issues.

The court, in accordance with the verdict, entered judgment providing, in pertinent part: "(t)hat respondent, State Highway Commission,

pay into Court the sum of EIGHTY-FOUR THOUSAND, NINE HUNDRED NINETY-FIVE AND 16/100 DOLLARS ($84,995.16) as full compensation to the petitioner, and the respondents, H. T. Butts and Lattie D. Matthews, Executrix of the Estate of M. A. Matthews, deceased, for the taking of the easement of right of way across said property of petitioner and the taking of all improvements located thereon and for all damages caused by the construction of the aforesaid State Highway Project." (Note: The gross sum of $84,995.16 consists of $77,000.00 plus $7,995.16, the sum of $7,995.16 being interest on $77,000.00 at six per centum per annum from January 1, 1960, to September 23, 1961.)

Provisions as to the respective interests of petitioner and respondents other than the Highway Commission in said gross sum of $84,995.16 are not pertinent to the questions presented on this appeal.

The Highway Commission excepted to said judgment and appealed.

*M. O. Lee, Wilson & Bain and Wiley F. Bowen for petitioner appellee.*

*Attorney General Bruton, Assistant Attorney General Lewis, Millard R. Rich, Jr., Member of Staff, and Bryan & Bryan for respondent State Highway Commission, appellant.*

*Robert Morgan for respondents Butts and Matthews, appellees.*

BOBBITT, J.  As to the measure of damages, the court instructed the jury, *inter alia*, as follows: ". . . where only a part . . . of a tract of land is appropriated by the State Highway Commission for public purposes, the measure of damages in such proceeding is the difference between the fair market value of the entire tract immediately before the taking and the fair market value of what is left immediately after the taking. The items going to make up this difference embrace compensation for the part taken and compensation for injury to the remaining portion which is to be offset under the terms of the controlling statute by any general or special benefit resulting to the landowner from the utilization of property taken for a highway." This instruction is in accord with our decisions. *Proctor v. Highway Commission,* 230 N.C. 687, 691, 55 S.E. 2d 479; *Robinson v. Highway Commission,* 249 N.C. 120, 105 S.E. 2d 287, and cases cited.

There is no controversy as to petitioner's right to recover compensation for the part taken, to wit, Tract A (including improvements thereon) and Tract B.

The primary question for decision is whether, in determining the injury, if any, *to the remaining portion* (17.14 acres) of his land, petitioner is entitled to compensation for diminution in the value thereof

caused by the fact he now has *direct* access therefrom only to the lanes of #401 ( as relocated) reserved exclusively for southbound traffic and only southbound traffic has *direct* access thereto. The question is drawn sharply into focus by exceptions and assignments of error relating to portions of petitioner's pleading and evidence and to portions of the court's instructions, including the allegations, evidence and instructions set forth in the following three paragraphs.

Petitioner alleged his remaining property, particularly the portions occupied by the Matthews filling station and bulk oil premises and the Frozen Custard Place, was greatly damaged "by the division of the lanes of travel in such a manner that said property can only attract and serve potential customers traveling in a southerly direction along said highway."

Petitioner offered evidence, which, as stated by the court, tended to show "that the sum of $40,000.00 damage to the remainder of his tract which was not taken consisted primarily of diminution in value because of the way in which the highway was constructed, particularly the construction of what has been referred to as a median strip, . . ."

The court instructed the jury that petitioner had offered evidence tending to show that, after the taking on January 1, 1960, #401 (as relocated) "had four lanes divided by an elevated median strip or divider, ten (10) to twelve (12) inches high above the surface of the highway and that traffic bound in only one direction had access to his property; further that the State Highway Commission had constructed elevated islands, 10 to 12 inches high above the surface of the highway, in front of . . . the Matthews property and the Frozen Custard property, so as to control and restrict access of the petitioner and others to the property. That if the petitioner has so satisfied you of this by the greater weight of the evidence then the court instructs you that this is relevant as circumstances tending to show diminution in the overall fair market value of the property *as an element* of damage to the remainder of that tract of land by reason of the location and construction of the highway." (Our italics)

"The question of what constitutes a taking is often interwoven with the question of whether a particular act is an exercise of the police power or of the power of eminent domain. If the act is a proper exercise of the police power, the constitutional provision that private property shall not be taken for public use, unless compensation is made, is not applicable." McQuillin, Municipal Corporations, Third Edition, Volume 11, § 32.27. "The state must compensate for property rights taken by eminent domain; damages resulting from the exercise of police power are noncompensable." *State v. Fox* (Wash), 332 P. 2d 943, 946; *Walker v. State* (Wash.), 295 P. 2d 328, and cases cited.

Petitioner contends the Highway Commission, by the relocation of #401 so that he now has direct access only to the lanes thereof reserved exclusively for southbound traffic, has appropriated a property right for which, under the law of eminent domain, he is entitled to compensation. The Highway Commission contends the relocation of #401 and the separation of the lanes for northbound and southbound traffic by a median is a traffic regulation adopted in the exercise of the police power vested in it by G.S. Chapter 136, Article 2, and injury to petitioner's remaining land caused thereby is not compensable.

Prior to January 1, 1960, the paved portion of #401 was twenty-four feet. Petitioner testified the traffic on the highways then passing his property "was tremendous." Project No. 8.14368, in its entirety and with reference to #401, was designed to promote the safety and convenience of the public by reducing the hazards of travel and expediting the flow of traffic. Petitioner does not allege, nor does he contend, the public safety and convenience were not served thereby.

"An individual proprietor has no right to insist that the entire volume of traffic that would naturally flow over a highway of which he owns the fee pass undiverted and unobstructed. In fact, while under some circumstances and conditions he has a right of access to and from his own premises, he has no constitutional right to have anyone pass by his premises at all." Nichols on Eminent Domain, Third Edition, Volume 2, § 6.445; *Board of Com'rs. of Santa Fe County v. Slaughter* (N.M.), 158 P. 2d 859; *City of Memphis v. Hood* (Tenn.), 345 S.W. 2d 887.

As stated by *Kyle, J.,* in *Muse v. Mississippi State Highway Commission,* 103 So. 2d 839: "Multiple lane highways have been constructed in all parts of the country; and median strips or neutral zones between lanes of traffic on multiple lane highways, with interchanges or crossovers at reasonable intervals to enable motorists to pass from one traffic lane to another, have been authorized and provided for in the standards of design adopted for the construction of such highways. Such median strips or neutral zones provide for a complete separation of traffic moving in opposite directions, and reduce the hazards incident to motor vehicle travel; and the establishment of such median strips or neutral zones have been recognized as a proper exercise of the police power."

In *Walker v. State, supra,* the plaintiffs owned property fronting five hundred feet on the south side of a primary four-lane state highway on which they operated a motel. The State Highway Commission installed a concrete center line curb, thereby preventing direct access from the plaintiffs' property to the lanes for westbound traffic. In

holding that the plaintiffs were not entitled to injunctive relief or compensation, the court, in opinion by *Weaver, J.,* said:

"Plaintiffs have no property right in the continuation or maintenance of the flow of traffic past their property. They still have free and unhampered ingress and egress to their property. Once on the Highway, to which they have free access, they are in the same position and subject to the same police power regulations as every other member of the traveling public. Plaintiffs, and every member of the traveling public subject to traffic regulations, have the same right of free access *to* the property *from* the highway. Re-routing and diversion of traffic are police power regulations. Circuity of route, resulting from an exercise of the police power, is an incidental result of a lawful act. It is not the taking or damaging of a property right.

"We have found no authority, nor has any been called to our attention, which allows, to the abutting property owner, damages allegedly arising from statutes or ordinances (a) establishing one-way streets; (b) forbidding 'U' and left turns; or (c) authorizing the use of other suitable traffic-control devices deemed necessary by the proper authorities to warn, regulate, and guide traffic upon public thoroughfares.

"Although an abutting property owner may be inconvenienced by one-way traffic regulation immediately in front of his property, he has no remedy if such regulation be reasonably adapted to the benefit of the traveling public. The property owner must point to illegality, fraud, or arbitrary or capricious conduct."

In accord: *Department of Public Works and Bldgs. v. Mabee* (Ill.), 174 N.E. 2d 801; *Iowa State Highway Commission v. Smith* (Iowa), 82 N.W. 2d 755, 73 A.L.R. 2d 680; *State v. Ensley* (Indiana), 164 N.E. 2d 342; *State v. Fox* (Wash.), *supra; People v. Ayon* (California), 352 P. 2d 519, *certiorari* denied *sub nomine Yor-Way Markets v. California,* 364 U.S. 827, 81 S. Ct. 65, 5 L. Ed. 2d 55; *State v. Linzell* (Ohio), 126 N.E. 2d 53; *In re Appropriation of Easements for Highway* (Ohio), 137 N.E. 2d 595, appeal dismissed, 131 N.E. 2d 395. See Annotation, "Abutter's Access-Traffic Regulation," 73 A.L.R. 2d 689, *692,* where the author states: "In no case has a court held unreasonable, on account of interference with access, a regulation of the general direction, flow, or division of all traffic on a given street or highway."

As stated in *People v. Ayon, supra:* "The compensable right of an abutting property owner is to direct access to the adjacent street and to the through traffic which passes along that street. (Citation) If this

basic right is not adversely affected, a public agency may enact and enforce reasonable and proper traffic regulations without the payment of compensation although such regulations may impede the convenience with which ingress and egress may thereafter be accomplished, and may necessitate circuity of travel to reach a given destination."

Except as noted below, petitioner, from his entire frontage, has direct and unrestricted access to and from the lanes of #401 (as relocated) reserved exclusively for southbound traffic. The Highway Commission (as indicated in the quoted portion of the court's instructions) constructed curbing at certain points in front of that part of petitioner's remaining property occupied by the Matthews filling station and bulk oil premises and the Frozen Custard Place. In this way, entrance into and exit from these places of business is restricted to the spaces provided therefor.

"While entire access may not be cut off, an owner is not entitled, as against the public, to access to his land at all points in the boundary between it and the highway; if he has free and convenient access to his property and to the improvements thereon, and his means of ingress and egress are not substantially interfered with by the public, he has no cause of complaint." 39 C.J.S., Highways § 141; Elliott on Roads and Streets, Fourth Edition, Volume II, § 882; *Iowa State Highway Commission v. Smith, supra,* and cases cited; *State v. Ensley, supra;* Annotation, "Traffic regulations which interfere with or restrict access to and from abutting property," 100 A.L.R. 491.

With reference to said restriction on direct access between said places of business and the lanes of #401 (as relocated) reserved exclusively for southbound traffic, plaintiff is entitled to recover compensation on account of injury to this portion of his remaining property to the extent, if any, such curbing substantially impairs free and convenient access thereto and the improvements thereon.

Petitioner, in his brief, states: "In the cases cited and relied on by the appellant, all that was done was to divide the lanes of travel or establish one-way traffic, etc., and no additional land of the abutting owner had been taken. Certainly if the appellant in this case had only divided the lanes of travel in the existing right of way and had not taken additional land, the petitioner would not have been entitled to recover damages for the exercise of the police power in dividing the lanes of travel. In the present case, however, additional land was taken and in the reconstruction of said highway the lanes of travel were divided."

In *State v. Ensley, supra,* a strip taken off the entire east side of the Ensley property, to wit, the frontage on Keystone Avenue as originally located, was appropriated "for the purpose of widening Key-

stone Avenue and constructing thereon" an improved and divided highway on which the remaining portion of the Ensley property fronted. A similar factual situation was involved in *People v. Ayon, supra,* and in *City of Memphis v. Hood, supra,* and in *In re Appropriation of Easements for Highway, supra.*

Here, #401 as relocated is essentially the same highway. The Highway Commission's original right of way is included in the right of way on which #401 is now located. All of petitioner's remaining property is west of said highway. Whether petitioner is entitled to compensation for diminution in the value of the remaining portion (17.14 acres) of his land by reason of the fact he now has *direct* access only to the lanes of #401 (as relocated) reserved exclusively for southbound traffic and only southbound traffic has *direct* access to his property does not depend upon whether a portion of his land was appropriated in connection with Project No. 8.14368. The separation of the lanes of #401 for northbound traffic from the lanes thereof for southbound traffic was and is a valid traffic regulation adopted by the Highway Commission in the exercise of the police power vested in it by G.S. Chapter 136, Article 2, and injury, if any, to petitioner's remaining property *caused thereby* is not compensable. We conclude, therefore, that the instruction that injury, if any, *caused thereby* was for consideration by the jury as an element of petitioner's damages, and the admission of evidence as to the injury to the remaining portion (17.14 acres) of petitioner's property *caused thereby,* were erroneous and entitle the Highway Commission to a new trial.

The present factual situation is quite different from that considered in *Hedrick v. Graham,* 245 N.C. 249, 96 S.E. 2d 129, and in *Kirkman v. Highway Commission, ante,* 428, ...... S.E. 2d ....... These decisions involved limited access highways where ingress to and egress from the abutting land was entirely cut off and the owner's right of direct access completely destroyed.

Shortly after our decision in *Hedrick v. Graham, supra,* the General Assembly enacted Chapter 993, Session Laws of 1957, now codified as G.S. § 136-89.48 *et seq.* Petitioner contends #401 (as relocated) is a "controlled-access facility" as defined therein.

In *Hedrick v. Graham, supra,* the plaintiff contended the defendants, *under existing statutes,* had no authority to condemn his right of direct access to and from the highway on which his property abutted. This Court held the State Highway Commission had *implied* statutory authority to do so. The 1957 Act conferred *express* statutory authority to do so. In our opinion, and we so hold, a "controlled-access facility," as defined in the 1957 Act, is a limited access highway where the Highway Commission acquires the legal right to cut off entirely the abutting

owner's right of direct access to and from the highway on which his property abuts.

Here, the Highway Commission has not designated #401 (as relocated) as a "controlled-access facility." It asserts no right to bar petitioner from direct access to the traffic lanes of #401 (as relocated) on which his property abuts. The judgment does not purport to vest such rights in the Highway Commission. It adjudges the Highway Commission has acquired an easement of right of way over Tracts A and B "for highway purposes."

Petitioner cites *Hiatt v. Greensboro,* 201 N.C. 515, 160 S.E. 748, and *Thompson v. R. R.,* 248 N.C. 577, 104 S.E. 2d 181. These decisions are discussed by *Parker, J.,* in *Smith v. Highway Commission, ante,* 410, ...... S.E. 2d ......, and further discussion is unnecessary. Suffice to say, they involve different factual situations and different legal principles are applicable.

Since it is probable the same question will arise at the next trial, we consider the Highway Commission's exceptions and assignments of error directed to the court's submission of the second and third issues.

The Highway Commission contends only the first issue should have been submitted; that the second and third issues involved matters with which it was not concerned; and that the respective interests of petitioner, Butts and the Mattews estate, *inter se,* in the gross amount the Highway Commission is required to pay, should be subsequently determined. Appellees contend it was for the court, in its discretion, to determine whether all issues should be determined in a single trial.

G.S. § 40-12 required the petitioner to state in his petition the names of all parties "who own or have, or claim to own or have, estates or interests in the said real estate," and that summons be served "on all persons whose interests are to be affected by the proceedings." *Hill v. Mining Co.,* 113 N.C. 259, 18 S.E. 171; *Raleigh v. Edwards,* 234 N.C. 528, 67 S.E. 2d 669; *Tyson v. Highway Commission,* 249 N.C. 732, 107 S.E. 2d 630. While this statute contemplates the respective interests of all parties who claim an estate or assert an interest in the real estate are to be determined in such proceedings, it contains no provision as to *when* or *in what manner* such determination is to be made.

G.S. § 40-23 provides: "If there are adverse and conflicting claimants to the money, or any part of it, to be paid as compensation for the real estate taken, the court *may* direct the money to be paid into the said court by the corporation, and *may* determine who is entitled to the same and direct to whom the same shall be paid, and *may* in its

discretion order a reference to ascertain the facts on which such determination and order are to be made." (Our italics)

G.S. § 40-23 refers specifically to "adverse and conflicting claimants." Manifestly, the provision that the court "may determine who is entitled to the same and direct to whom the same shall be paid" contemplates a situation where such determination may be made *as a matter of law.* It does not deprive any claimant of his right to a jury trial as to controverted issues of fact. Moreover, the provision that the court "may in its discretion order a reference to ascertain the facts on which such determination and order are to be made" does not deprive any claimant of his right to except to an order of compulsory reference and preserve his right to a jury trial as to controverted issues of fact. See *Light Co. v. Horton,* 249 N.C. 300, 106 S.E. 2d 461. G.S. § 40-23 contains no mandatory provision as to *when* or *in what manner* the respective interests are to be determined.

"The rule is generally recognized (though not invariably followed) that, where there are several interests or estates in a parcel of real estate taken by eminent domain, a proper method of fixing the value of, or damage to, each interest or estate, is to determine the value of, or damage to, the property as a whole, and then to apportion the same among the several owners according to their respective interests or estates, rather than to take each interest or estate as a unit and fix the value thereof, or damage thereto, separately." 18 Am. Jur., Eminent Domain § 239; Nichols on Eminent Domain, Third Edition, Volume 4, § 12.36(1); Lewis on Eminent Domain, Third Edition, Volume II, § 716; Annotations, 69 A.L.R. 1263 and 166 A.L.R. 1211.

In accordance with this general rule, the court properly submitted the first issue, relating to the gross amount the Highway Commission is required to pay on account of the appropriation of the land and the improvements thereon without regard to the separate interests of Butts, the Matthews estate, and other respondents. The court was required, then or later, to order disbursement of the gross amount the Highway Commission was required to pay. To determine what part thereof, if any, should be paid to Butts and the Matthews estate, it was necessary, then or later, that the damages each had suffered be determined.

Tract A included the land and improvements subject to the Butts lease. Butts lost his lease by reason of the appropriation by the Highway Commission of Tract A. To the extent he suffered loss on account thereof, Butts is entitled to compensation. Tract B included a portion of the land, but not the improvements thereon, subject to the Matthews lease. To the extent the appropriation of Tract B decreased the value of the Matthews lease, the Matthews estate suffered loss for

which it is entitled to compensation. There is no controversy as to the validity of the Butts lease or of the Matthews lease or as to any of the terms thereof. The second and third issues relate solely to the damage, if any, suffered by the lessees; and much of the evidence relevant and competent in relation to these issues was also relevant and competent in relation to the first issue.

Under these circumstances, whether the issues relating to the damages, if any, sustained by Butts and the Matthews estate, should be determined by the same jury upon the same evidence in a single trial, or deferred for trial by another jury upon other evidence, was determinable by the court in the exercise of its discretion. Hence, in our opinion, and we so decide, appellant's exceptions and assignments of error to the submission of the second and third issues are without merit.

It should be noted that we are not presently concerned with a factual situation where the pleadings raise issues (1) as to who owns the land or particular interests therein, or (2) as to the validity or terms of a contract, lease, mortgage, etc. Ordinarily, the trial of such collateral issues, involving a determination of *what* the respective claimants own, should be separate from the trial to determine the gross amount the Highway Commission is required to pay.

In *Light Co. v. Horton, supra,* the controversy between respondents Horton and respondents Strikeleather, *et al.,* related to what interest each owned in the condemned land. In *Miller v. Asheville,* 112 N.C. 759, 16 S.E. 762, cited by appellant, the property was owned by a life tenant and (contingent) remaindermen; and the only factual element, in determining their respective interests in the gross amount, related to the life expectancy of the life tenant. See also, *Miller v. Asheville,* 112 N.C. 769, 16 S.E. 765. In *Meadows v. United States* (C.C.A. 4th), 144 F. 2d 751, the question was whether the court erred in submitting one issue as to the gross amount rather than separate issues (1) as to the land and improvements and (2) as to the timber.

We have considered the decisions from other jurisdictions cited by appellant. Different statutory provisions were involved and discussion thereof would serve no useful purpose.

It seems appropriate to refer to the comprehensive statute, Session Laws of 1959, Chapter 1025, entitled, "AN ACT TO AMEND G.S. 136-19 AND TO ADD A NEW ARTICLE TO CHAPTER 136 OF THE GENERAL STATUTES RELATING TO CONDEMNATION PROCEDURE APPLICABLE TO THE STATE HIGHWAY COMMISSION." However, this statute does not apply "to any takings or causes of actions arising prior to the effective date" thereof, to wit, July 1, 1960. Present decision relates to the law applicable on January 1, 1960.

Appellant's remaining exceptions and assignments of error relate to questions as to the competency of certain evidence. Since the questions presented thereby may not arise at the next trial, discussion thereof is deemed unnecessary.

On the ground stated above, a new trial is awarded.

New trial.