STATE HIGHWAY COMMISSION v. T. W. ROSE AND WIFE, ETTA
ROSE; REECE COCKERHAM AND WIFE, OPAL COCKERHAM,
LESSEES; WAYNE M. MAYES AND WIFE, DELLA MAYES, LESSEES;
J. N. SPEAS, LESSEE

No. 7623SC337

(Filed 6 October 1976)

1. **Eminent Domain § 7— issues other than compensation — traffic islands
— authority of court to decide**

　　Pursuant to G.S. 136-108 the trial court had authority to pass
upon the question whether certain traffic islands on defendants' prop-
erty constituted a substantial interference with access to the remain-
ing property which required the payment of compensation.

2. **Eminent Domain § 2— abutting landowner on highway — right of ease-
ment for access purposes**

　　An abutting landowner on a public highway has a special right
of easement and user in the public road for access purposes, and this
is a property right which cannot be damaged or taken from him
without due compensation. While entire access may not be cut off, an
owner is not entitled, as against the public, to access to his land at
all points in the boundary between it and the highway.

3. **Eminent Domain § 2— access to public highway interfered with — in-
gress and egress required**

　　Where the State interferes with the access of a property owner
to a public highway the question is usually whether reasonable means
of ingress or egress remain or are provided.

4. **Eminent Domain § 2— construction of traffic islands — access to de-
fendants' property — sufficiency of evidence**

　　Evidence was sufficient to support the finding of the trial court
that even after the construction of traffic islands, defendants retained
reasonable means of ingress and egress to and from their property;
therefore, the court properly concluded that there had been no sub-
stantial interference by plaintiff with defendants' access to their
property.

5. **Eminent Domain § 7— traffic islands constructed — no compensation
due defendants — protective order for subsequent trial improper**

　　Though the trial court's ruling that defendants were not entitled
to receive compensation from plaintiff for any diminution in value to
their remaining land caused by the construction of traffic islands
was proper, and though that part of the court's protective order pro-
hibiting defendants, their witnesses and counsel at trial from mention-
ing the islands in oral testimony or in arguments to the jury was
appropriate, the court erred in prohibiting defendants from intro-
ducing any map, photographs or other exhibit depicting the islands,
since it is the rule in this jurisdiction that witnesses may use maps
or photographs to illustrate their testimony and the trial court could
in this case by appropriate instructions prevent the jury from con-

sidering the islands as an element of damage to defendants' remaining property; moreover, keeping from the jury maps and photographs depicting the islands would have little or no effect should the presiding judge permit a jury view of the property in question pursuant to G.S. 1-181.1.

APPEAL by defendants Rose from *Graham, Judge.* Judgment entered 13 February 1976 in Superior Court, YADKIN County. Heard in the Court of Appeals 2 September 1976.

Plaintiff instituted this action on 24 April 1972 for purpose of condemning and appropriating certain lands belonging to defendants Rose needed to widen and improve N. C. Highway 67 and U. S. Highway 21 Business in the Town of Jonesville in Yadkin County. Defendants other than defendants Rose were made parties because of their leasehold interests in portions of the land.

On 3 November 1975 plaintiff, following other proceedings not pertinent to this appeal, filed a motion pursuant to G.S. 136-108 for a determination by the court, sitting without a jury, of certain issues other than the issue of just compensation. The issue pertinent to this appeal is whether the construction of certain traffic "islands" on the property of plaintiff at the point where said property intersects with the remaining property of defendants is a legitimate exercise of the police power for which no compensation is required to be paid; or, stated differently, whether said islands constitute a substantial interference with access to the remaining property which requires the payment of compensation.

In said motion plaintiff also asked that if the court determined the issue in its favor that it enter a protective order directing defendants, their counsel and their witnesses to make no mention of said islands during the course of their testimony before the jury when the issue of amount of compensation would be tried.

At a hearing on the motion, evidence by way of oral testimony, maps and photographs tended to show:

The property of defendants Rose consists of a four-acre tract of land located on the south side of N.C. 67 and U.S. 21 intersections. Located on the tract and fronting on N.C. 67 are a one-story building occupied by a Firestone retail store, a service station and a restaurant; located behind those buildings and

not fronting on the highway are buildings housing a garage and a motel. Prior to the taking defendants had approximately 406.09 feet of unobstructed frontage, not including a twenty-foot wide alley which defendants do not own and excepting a sidewalk 75 feet long. Prior to the taking cars could enter and leave defendants' property at almost any point along N.C. 67.

In order to expand N.C. 67 plaintiff appropriated an additional right-of-way across the front of defendants' land and constructed along the southern edge of the right-of-way one soil and five concrete islands to regulate the points of entry and exit to defendants' property. The islands are located within plaintiff's right-of-way and create five points of entry; three of the points of entry have widths of 35 feet and two have widths of 29 feet. The islands are ten feet wide and six inches high.

Defendants' evidence tended to show that presently there is no access to the immediate front of the Firestone building or the service station so that cars must park on the side of those buildings; that the parking in front of the restaurant is as good as before the taking.

The court made findings of fact which include findings substantially as set forth in the evidence hereinabove summarized. It concluded that construction of the islands was an exercise of plaintiff's authority under the police power to make reasonable regulations as to the manner and points of entry to and from the remaining property of defendants Rose; that there has been no substantial interference with defendants' rights of access; and defendants are not entitled to receive compensation as a result of the construction of said islands by plaintiff.

The court adjudged that defendants are not entitled to receive compensation from plaintiff for any diminution in value of their remaining land caused by the islands. It further granted the protective order requested by plaintiff and ordered that defendants, their counsel and their witnesses, when the action is tried before a jury on the issue of damages, make no mention of any of said structures (islands) in oral testimony, introduce no map, photograph or other exhibit which depicts said structures in any manner, and make no mention of said structures in any opening or closing argument to the jury.

Defendants Rose appealed.

*Attorney General Edmisten, by Assistant Attorney General Charles M. Hensey, for the State.*

*Franklin Smith, and Folger & Folger, by Fred Folger, for defendant appellants.*

BRITT, Judge.

[1]  Defendants contend first that the trial court did not have authority to pass upon the question whether defendants are entitled to compensation because of the construction of the islands adjacent to their property. We reject this contention.

G.S. 136-108 provides: "After the filing of the plat, the judge, upon motion and 10 days' notice by either the Board of Transportation or the owner, shall, either in or out of term, hear and determine any and all issues raised by the pleadings other than the issue of damages, including, but not limited to, if controverted, questions of necessary and proper parties, title to the land, interest taken, and area taken."

We hold that the trial court had authority to pass upon the question.

Defendants contend that the trial court's findings of fact were not supported by the evidence. This contention has no merit. Not only was the oral testimony sufficient to support the findings but it was buttressed with maps, plats and photographs depicting the *locus in quo* both before the taking and following the construction of the islands in question.

Defendants contend that the conclusions of law that (1) the construction of the islands was a reasonable exercise of authority under the police power of the state, (2) there has been no substantial interference with their abutter's rights of access, and (3) defendants are not entitled to receive compensation as a result of the construction of said structures, are not supported by applicable North Carolina law. We find no merit in this contention.

[2]  " . . . [A]n abutting landowner on a public highway has a special right of easement and user in the public road for access purposes, and this is a property right which cannot be damaged or taken from him without due compensation. While entire access may not be cut off, an owner is not entitled, as against the public, to access to his land at all points in the boun-

dary between it and the highway; if he has free and convenient access to his property and to the improvements thereon, and his means of ingress and egress are not substantially interfered with by the public, he has no cause of complaint." 39 C.J.S., Highway § 141, p. 1081.

In *Haymore v. Highway Commission*, 14 N.C. App. 691, 189 S.E. 2d 611, *cert. denied*, 281 N.C. 757, 191 S.E. 2d 355 (1972), this court held:

> "The question as to what constitutes a taking of a landowner's right to access has been the subject of numerous decisions in this jurisdiction, all to the effect that while a substantial or unreasonable interference with an abutting landowner's access constitutes the taking of a property right, the restriction of his right of entrance to reasonable and proper points so as to protect others who may be using the highway does not constitute a taking. Such reasonable restriction is within the police power of the sovereign and any resulting inconvenience is *damnum absque injuria*." (Citations omitted.)

The North Carolina Supreme Court has further held that the construction of a median strip so as to limit landowner's ingress and egress to lanes for southbound travel when he formerly had direct access to both the north and southbound lanes was a valid traffic regulation adopted by the Highway Commission in the exercise of the police power vested in it by the statutes. *Barnes v. Highway Commission*, 257 N.C. 507, 126 S.E. 2d 732 (1962). In *Barnes* the court stated that: "While entire access may not be cut off, an owner is not entitled, as against the public, to access to his land at all points in the boundary between it and the highway . . . ." 257 N.C. at 517, 126 S.E. 2d at 739.

> "It is clear under the principles of the cases cited herein that when access has been interfered with by the state the question involved is one of 'degree.' If the interference is not substantial and if reasonable means of ingress and egress remains or is provided, there has been a legitimate exercise of the police power. If the interference is substantial and no reasonable means of ingress or egress remains or is provided, there has been a taking of a property right under the power of eminent domain." *Highway Commission v. Yarborough*, 6 N.C. App. 294, 170 S.E. 2d 159 (1969).

**[3, 4]**  Where the State interferes with the access of a property owner the question is usually whether reasonable means of ingress or egress remain or are provided. *Highway Commission v. Yarborough, supra.* In the present case, this question has been resolved against the defendants and the trial court's findings were supported by competent evidence. Even after the construction of the islands, the defendants retained reasonable means of ingress and egress. The trial court's conclusion that there had been no substantial interference with access was proper.

**[5]**  Defendants contend that the restrictive order entered by the trial court is *too* restrictive and deprives them of the right to present adequately to the jury their case with respect to the issue of just compensation. We think this contention has merit.

In view of the trial court's ruling that defendants are not entitled to receive compensation from plaintiff for any diminution in value to their remaining land caused by the traffic islands, and our affirmance of that ruling, we think that part of the protective order prohibiting defendants, their witnesses and counsel, at trial from mentioning the islands in oral testimony or in arguments to the jury is appropriate. However, we hold that the court erred in prohibiting defendants from introducing any map, photograph or other exhibit which depicts the islands.

For decades it has been permissible in this jurisdiction for a witness to use a map, diagram or photograph of a place or object to illustrate his testimony and make it more intelligible to the court and jury. See 1 Stansbury, N. C. Evidence § 34 (Brandis Rev. 1973), and cases therein cited. These aids have been particularly helpful in condemnation cases in providing the court and jury with better understanding with respect to the subject property before and after the taking.

In the instant case any photographs and accurate maps of the subject property, made since the taking and changes brought about pursuant thereto, would have to depict the islands in front of defendants' property; but we perceive no reason why the judge presiding at the trial will not be able by appropriate instructions to prevent the jury from considering the islands as an element of damage to defendants' remaining property.

There is an additional reason for our ruling regarding maps and photographs. G.S. 1-181.1 authorizes the judge presiding

at the trial of any action or proceeding involving the condemnation of real property, in his discretion, to permit the jury to view the property which is the subject of condemnation. It goes without saying that if the presiding judge should permit a jury view in this case, keeping from the jury maps and photographs depicting the islands would have little or no effect.

For the reasons stated, that portion of the protective order forbidding the introduction of any map, photograph or other exhibit depicting the islands in any manner is nullified. Except for said portion, the judgment appealed from is affirmed.

Modified and affirmed.

Judges PARKER and CLARK concur.