STATE HIGHWAY COMMISSION v. NORTH CAROLINA REALTY CORPORATION; JOHN B. PITTMAN, TRUSTEE; AND SOUTHERN NATIONAL BANK OF NORTH CAROLINA

No. 6920SC92

(Filed 2 April 1969)

1. Appeal and Error § 26— exception to signing of the judgment
     An exception to the signing of the judgment presents the face of the record proper for review.

2. Eminent Domain § 7— highway condemnation
     In this highway condemnation proceeding, use of the terms "access is partially controlled" in the pleadings, "control of access over a portion"

in the consent order by which it was agreed that only the issue of damages would be submitted to the jury, and "Controlled-Access facility" in the judge's charge, without distinguishing them, may have confused the jury as to what access rights were being denied.

**3. Eminent Domain § 2— right of access**

The owner of land abutting a highway has a special right of easement in the public road for access purposes, this being a property right which cannot be damaged or taken from him without due compensation.

**4. Eminent Domain § 2— right of access**

The statute providing that abutting landowners are not entitled to access to new highway locations recognizes that the denial of such access constitutes the taking of a property right. G.S. 136-89.52.

**5. Eminent Domain § 7— instructions — compensation for denial of access to new highway**

In a highway condemnation action, the court erred in instructing the jury that the denial of rights of access to a new highway location should be considered in determining general damages, but that "the owners of property abutting new highway locations are not entitled, as a matter of right, to access to such new highway and are not entitled to compensation for a taking of access rights, as such, to the new highway since no such rights ever existed," the denial of such access constituting the taking of a property right for which the owner is entitled to compensation.

APPEAL by defendant North Carolina Realty Corporation from *Seay, J.,* October 1968 Civil Session of Superior Court of RICHMOND County.

Plaintiff instituted this action on 6 November 1967 for the appropriation for highway purposes of the fee simple title to 13.36 acres of a 117.19-acre tract of land located near the City of Rockingham and owned by defendant North Carolina Realty Corporation (Realty Corporation).

The appropriation was for the purpose of a right of way for State Highway Project 8.1666501, Richmond County; known generally as U. S. Highway #220 By-Pass around Rockingham.

The parties consented to an order dated 30 October 1968 in which it is found, among other things, that "all issues raised by the pleadings are herein determined, except the issue of just compensation."

The court submitted and the jury answered the issue as follows:

"What sum are the defendants entitled to recover of the plaintiff, State Highway Commission, for the appropriation of a portion of their property for highway purposes?

ANSWER: $7,348.00."

Upon the entry of judgment in accordance with the verdict, defendant Realty Corporation excepted and appealed.

*Attorney General Robert Morgan, Deputy Attorney General Harrison Lewis, and Trial Attorney Claude W. Harris for plaintiff appellee.*

*Jones and Deane by W. R. Jones for defendant North Carolina Realty Corporation appellant.*

MALLARD, C.J.

[1]  Defendant excepted to the signing of the judgment. In 1 Strong, N. C. Index 2d, Appeal and Error, § 26, the rule is stated as follows: "An appeal is itself an exception to the judgment and to any matter appearing on the face of the record proper. A sole exception to the judgment or to the signing of the judgment likewise presents the face of the record proper for review."

In an attachment to the complaint stating the interest or estate taken as required by G.S. 136-103, with respect to control of access, it is alleged:

> "Access is partially controlled under the police power of the Highway Commission as is indicated by control-of-access (C/A) lines on the plan sheet attached hereto and there will be no access to, from, or across the areas within the control-of-access (C/A) lines to the main traffic lanes, ramps, or approaches from the property abutting said highway right of way except by way of the reasonable and adequate access provided at those points within the control-of-access lines as indicated on the plan sheet attached hereto."

It is noted that the allegation is that access is *partially controlled* as shown on a "plan sheet" attached, but upon an examination of the record, there is no "plan sheet" included. The allegation is therefore, on this record, indefinite and uncertain as to what is meant by the term "access is partially controlled."

In the consent order of 30 October 1968 there is a reference in paragraph two as to the control of access, in which it is stated:

> "That the plaintiff is an agency of the State of North Carolina, and, on the 6th day of November, 1967, appropriated fee simple title to right of way for all purposes for which the plaintiff is authorized by law to subject the same with control of access over a portion of the above-referred to property of defendants for the construction of State Highway Project 8.1666501, said

property appropriated being described on a map filed in this action."

This order states that the control of access is over a portion of the property referred to, but it does not state on what portion of the property; however, it does state that the property appropriated is being described on a "map filed in this action." This "map filed in this action" was not identified as such in the record.

Then in paragraph three of this same order it is stated that "the plat filed by the plaintiff in this action" is a correct portrayal of what it purports to show and is a fair and accurate representation of the property affected by the appropriation and the property and property rights appropriated. "The plat filed by the plaintiff in this action" was not identified as such in the record.

In the introduction of evidence the plaintiff, after all the witnesses had testified without objection and without other identification, offered in evidence the "Court Map marked Court's Exhibit 'A' ", and this is the only plan, map, or plat appearing as an exhibit in the record in this Court. This appears to be a map of the entire property, including that portion which was taken. All three of the copies of the exhibit filed also fit the description of the "plat" described in paragraph three of the consent order above mentioned.

[2] The pleadings referred to a "plan sheet." In paragraph two the consent order refers to "a map filed in this action," and paragraph three of the consent order refers to "the plat filed by the plaintiff." The judgment states that a copy of the plat showing the right of way and control of access appropriated has been filed as a part of the pleadings in this action. On some of the exhibits filed here, there appear in several places the letters "C/A" within a circle on or near the boundary lines of the portion shown to be taken, and at one place there appears "BEGIN C/A"; however, this does not appear on one of the copies of the exhibit filed here. There were three copies of a map filed as an exhibit in this Court — two of them are certified to be "a true copy." The legend on these two reads in part "Surveyed 12/27/67" and on the bottom right-hand corner they are marked "Revision 9/10/68." These two are identical. One of the copies of a map filed as an exhibit here is not certified to be a true copy. The legend on it reads in part "Surveyed 12/27/67" and on the bottom right-hand corner it is marked "Revision 1/31/68," and on this map the C/A symbols are located at different points along Midway Road than are the C/A symbols on the other two maps. The record reveals that the complaint was filed 6 November 1967, which was over a month before the survey on 27 December 1967.

There is also no legend on these copies of exhibits or maps indicating what the encircled letters C/A mean. We assume, however, that they indicate control-of-access as is indicated on the attachment to the complaint relating to a "plan sheet." If so, this control of access extends for some unknown distance on Midway Road, the actual distance depending upon which copy of the exhibit filed here is being used. The record is not clear as to what map the witnesses were referring in their testimony. The "Court map marked Court's Exhibit 'A'" was not offered in evidence until after all of the witnesses had testified. We think that the use of the terms "access is partially controlled" in the pleadings, "control of access over a portion" in the consent order, and "Controlled-Access facility" in the judge's charge, without distinguishing them, may have confused the jury as to what access rights were being denied.

**[5]** Appellant's exception no. 20 is directed to a portion of the charge. In order to understand this objection and exception, it is necessary to state a portion of the charge given before and after the portion excepted to. The portion excepted to is between the letters (A) and (B) in the following excerpt from the charge:

> "In this action the appropriation is for the construction of a controlled-access highway along a new route or location through defendants' property. I charge you that you shall consider the effect that the appropriation of the property for use as a controlled-access highway may have on the fair market value of the defendants' remaining property immediately after the taking, and, in so doing, the denial of rights of access to the new highway location shall be considered in determining general damages. (A) However, in so doing, I charge you that the owners of property abutting new highway locations are not entitled, as a matter of right, to access to such new highway and are not entitled to compensation for a taking of access rights, as such, to the new highway since no such rights ever existed. (B) As I have said, you shall take into consideration in arriving at the fair market value of the remaining land immediately after the taking in effect (sic) which denial of access to the new highway has upon the fair market value of the remainder immediately after the taking."

G.S. 136-89.52, enacted in 1957, reads in part as follows: "Along new highway locations abutting property owners shall not be entitled, as a matter of right, to access to such new locations; however, the denial of such rights of access shall be considered in determining general damages."

In the first two sentences in the above-quoted portion of the charge the judge instructed the jury that they were to consider the denial of access rights as provided by this statute, and then added, "(h)owever, in so doing . . . the owners of property abutting new highway locations . . . are not entitled to compensation for a taking of access rights, as such, to the new highway since no such rights ever existed." The defendant contends that this was error.

**[3-5]**    In the case of *Abdalla v. Highway Commission*, 261 N.C. 114, 134 S.E. 2d 81, the Supreme Court said:

> "It is generally recognized that the owner of land abutting a highway has a right beyond that which is enjoyed by the general public, a special right of easement in the public road for access purposes, and this is a property right which cannot be damaged or taken from him without due compensation."

In the instant case, except for the provisions of G.S. 136-89.52, the defendant as the owner of the land abutting the new highway location had a special right of easement for access thereto beyond that enjoyed by the general public. Such special right has been held to be a property right, and this right is recognized in the statute which requires that the denial of such rights of access shall be considered in determining general damages. *Highway Commission v. Nuckles*, 271 N.C. 1, 155 S.E. 2d 772. The legislature in using the term "denial of such rights of access" recognized that there were such rights to be denied. Since the abutting landowner had such rights of access, a denial thereof is the equivalent of the taking thereof. We think that the instruction complained of and excepted to was prejudicial in that it tended to confuse the jury.

Defendant has other exceptions, but we do not deem it necessary to discuss them as they probably will not occur in a new trial.

New trial.

BRITT and PARKER, JJ., concur.