STATE HIGHWAY COMMISSION, PLAINTIFF v. E. P. YARBOROUGH, ADMINISTRATOR OF THE ESTATE OF ZULA MATHEWS AND WILLIAM E. MATHEWS, ATTORNEY IN FACT, DEFENDANTS

No. 6916SC427

(Filed 22 October 1969)

1. **Eminent Domain § 5— highway condemnation — interest on damages — instructions**

    In highway condemnation proceeding to determine the issue of landowners' damages, trial court did not err in failing to instruct the jury that they were not to consider the question of interest in determining damages, where no special request was made for such instruction.

2. **Eminent Domain § 5— amount of compensation — interest — duty of court**

    It is the duty of the court to add interest to an award of damages for the taking of property pursuant to G.S. Ch. 136.

3. **Eminent Domain § 5— highway condemnation — damages — interest**

    In highway condemnation proceedings under G.S. Ch. 136, interest is an

element of recovery that is separate from and in addition to the measure of damages to be used by the jury in arriving at just compensation.

**4. Eminent Domain § 5— determination of compensation — house as separate item of damages — evidence**

In highway condemnation proceeding to determine the issue of landowners' damages, testimony by landowners' witness that a dwelling house located on the land condemned by the Highway Commission had a fair market value of $12,000 prior to the taking, *is held* not susceptible to interpretation by the jury that the destruction of the house was compensable as a separate item of damage, when the testimony is considered in the light of the witness' entire testimony and in connection with the court's instructions on the proper measure of damages.

**5. Eminent Domain § 6— determination of compensation — buildings on land — evidence of improvements**

Where land upon which buildings have been erected and affixed to the soil is taken by eminent domain, so far as the buildings add to the market value of the land, they must be considered in determining the compensation to be awarded to the owner; and it is therefore competent for a witness to explain the value he placed on improvements in arriving at the total value of the property before the taking.

**6. Eminent Domain § 5— market value — assessment of land and improvements**

Market value in eminent domain proceedings may not be arrived at by assessing separately the value of land and improvements and adding the two together.

**7. Eminent Domain § 5— determination of compensation — drainage easement — increased flow of water — evidence**

In highway condemnation proceeding to determine landowners' damages, it was proper to allow the landowners' witnesses to express their opinion that the drainage easements acquired by the Highway Commission would result in an increased flow of water onto portions of landowners' remaining property and thereby lessen its value, since the size of the easements and the resultant increased flow of water were elements of damages to be considered by the jury.

**8. Eminent Domain § 7; Witnesses § 9— highway condemnation — redirect examination**

Where landowners' witness in highway condemnation proceeding admitted on cross-examination that property adjoining the condemned property had not been developed for residential use since the condemnation, trial court properly allowed the witness to explain on redirect examination that the property had no access whatsoever to any public road.

**9. Eminent Domain § 7; Witnesses § 9— highway condemnation proceeding — redirect examination**

Where landowners' witness in highway condemnation proceeding testified on cross-examination that prior to the condemnation the adjoining property had not been available for residential development, trial court properly permitted the witness to explain on redirect examination that he had

reached this conclusion after unsuccessfully trying to purchase the property for residential development.

**10. Eminent Domain § 2— landowner abutting highway — common law right of access — "taking"**

At common law the owner of land abutting a highway, although not entitled to access at all points along the boundary between his land and the highway, has a special right of easement for access purposes, and substantial interference with this free and convenient access to the highway is a "taking" of a property right for which he may recover just compensation.

**11. Eminent Domain § 2— highway condemnation — acts constituting a "taking"**

While a substantial or unreasonable interference with an abutting landowner's access constitutes the taking of a property right, the restriction of his right of entrance to reasonable and proper points so as to protect others who may be using the highway does not constitute a taking, such reasonable restrictions being within the police power and *damnum absque injuria.*

**12. Eminent Domain § 2— acts constituting a "taking"**

If the interference with landowner's access to an abutting highway is not substantial and if reasonable means of ingress and egress remains or is provided, there has been a legitimate exercise of the police power, but if the interference is substantial and no reasonable means of ingress and egress is provided, there has been a taking of a property right under the power of eminent domain.

**13. Eminent Domain § 2— what constitutes a "taking" — controlled-access highway — residential development**

Upon the completion of a controlled-access highway project both sides of the highway extending through the landowners' property were fenced and no service roads parallel to the highway were constructed. The landowners' evidence was that the highest and best use for the property before the taking was for residential development, but that with access on both sides of the highway now controlled it would be necessary to construct streets up to 1858 feet in length on both sides of the highway in order to render the property accessible for development. *Held:* The restriction of the landowners' access to the highway was a taking of a property right for which compensation must be paid.

**14. Trial § 37— instructions on interested witness — request**

In a highway condemnation proceeding to determine the issue of damages, it was not incumbent upon the trial court, absent a request, to instruct the jury that an heir to the property in question was an interested witness, this being a subordinate feature of the case.

**15. Trial § 51— motion to set aside verdict**

Motion to set aside the verdict is addressed to the sound discretion of the trial court, and its denial of the motion is not subject to review in the absence of an abuse of discretion.

APPEAL by plaintiff from *Braswell, J.,* 31 March 1969, Special Civil Session of SCOTLAND County Superior Court.

Condemnation proceedings were instituted under Chapter 136 of the General Statutes to condemn additional right-of-way over defendants' property for use in connection with the widening and relocation of U.S. Highway No. 74 (No. 74) around the Town of Laurinburg in Scotland County (Highway Project 8.16793). The plaintiff Highway Commission instituted the proceedings on 3 June 1963 and deposited with the court on that date $9,466.00 as its estimate of just compensation.

The property affected by the taking consisted of 87.76 acres of cleared and wooded land approximately one and one-half miles west of the corporate limits of Laurinburg. No. 74, as it existed prior to the taking, extended for 1858 feet through the northern portion of the property. A high voltage power line was located on a 75 foot wide easement 374 feet south of No. 74 and parallel with it. The property was in effect divided into three parts: a 22.82 acre tract on the north side of the highway, an 18.86 acre tract between the highway and the power line easement, and a 39.66 acre tract beyond and south of the power line easement. The property was bounded on the west by a state maintained rural paved road (RPR 1321) which intersected and crossed No. 74 at a point known as "Elmore."

The interests acquired by the plaintiff consisted of the following: (1) a permanent right-of-way over a 3.79 acre strip of land alongside the southerly boundary of the existing highway right-of-way and approximately parallel with it; (2) a permanent right-of-way over an .02 acre tract north of the existing highway right-of-way and in the triangle formed by the intersecting of the rights-of-way of No. 74 and RPR 1321; (3) two drainage ditch easements totaling .28 acre; (4) the right to control access along the right-of-way. A one-story dwelling house located on the south side of No. 74 was included within and appropriated along with the 3.79 acre strip. This strip was used to widen the highway from two lanes to its present four lanes.

Before the taking there was unrestricted access from defendants' property to U.S. Highway No. 74 along both the north and south sides. After the taking fences were constructed along both sides of the highway and no direct access was permitted.

By consent order the parties waived the appointment of commissioners, settled all issues other than the issue of damages and proceeded directly to trial before a jury. The jury assessed damages

in the amount of $44,799.00 and from the entry of a judgment that the defendant recover that amount plus interest assessed by the court in the amount of $12,434.93 the plaintiff appeals assigning error.

Robert Morgan, Attorney General, by Harrison Lewis, Deputy Attorney General; Charles M. Hensey, Trial Attorney; and Claude W. Harris, Trial Attorney, for the State Highway Commission.

Mason, Williamson & Etheridge by James W. Mason and Kennieth S. Etheridge for defendant appellee.

GRAHAM, J.

[1]    The trial court did not instruct the jury that they were not to consider the question of interest in determining damages since it would be added by the court to their verdict. No special request was made for such an instruction but the plaintiff nevertheless insists that the court's failure to so charge was error.

[2, 3]    Since the enactment of G.S. 136-113 in 1959, it has been the duty of the court to add interest to an award of damages for the taking of property pursuant to Chapter 136 of the General Statutes. Prior to that time, it was the jury's function to award interest as just compensation for a delay in the payment for the property taken and it was necessary for the court to charge as to that duty. DeBruhl v. Highway Commission, 247 N.C. 671, 102 S.E. 2d 229. The plaintiff contends that since it was formerly the duty of the court of its own motion and without request to instruct the jury to award interest as an additional sum, it should follow that it is now the duty of the court to instruct the jury not to do so. We do not agree. Interest is an element of recovery that is separate from and in addition to the measure of damages to be used by the jury in arriving at just compensation. The court accurately instructed the jury as to the measure of damages as set forth in G.S. 136-112. We have no reason to speculate that the jury went beyond the measure of damages given by the court and added a separate and distinct element of damages. If the plaintiff was concerned that the jury might deliberate about a matter outside of its province, special instructions should have been requested as provided under G.S. 1-181. In the absence of such a request we find that no prejudicial error resulted.

[4]    The plaintiff further assigns as error the admission of testimony by the defendants' witness Rorie that in his opinion the dwelling house located on the property taken had a fair market value of $12,000.00 prior to the taking on 3 June 1963.

[5] "Where land upon which buildings have been erected and affixed to the soil is taken by eminent domain, so far as the buildings add to the market value of the land, they must be considered in determining the compensation to be awarded to the owner." 27 Am. Jur. 2d, Eminent Domain, § 291; *Proctor v. Highway Commission*, 230 N.C. 687, 55 S.E. 2d 479. It is therefore competent for a witness to explain the value he placed on improvements in arriving at the total value of the property before the taking. The plaintiff obviously recognizes this rule, for its own witnesses were questioned and testified as to the value each of them placed on the house. The plaintiff contends, however, that the testimony of Rorie was prejudicial because he did not express an opinion as to the total value of the property, and thus his testimony stands alone as evidence concerning the value of the house as a separate and distinct item of damage.

[4, 6] It is true that market value in a condemnation case may not be arrived at by assessing separately the value of land and improvements and adding the two together. 27 Am. Jur. 2d, Eminent Domain, § 291; 1 A.L.R. 2d 881, *et seq.* But considering the testimony of the witness Rorie in its entirety we think it clear that the value he placed on the house was his opinion as to how much its presence enhanced the market value of the land. This was consistent with the manner in which all witnesses testified without objection, and in our opinion his testimony could not have left the jury with the impression that the destruction of the house was compensable as a separate item of damage. This is particularly true when considered in connection with the court's instruction to the jury as to the proper measure of damages. *Highway Commission v. Privett*, 246 N.C. 501, 99 S.E. 2d 61. Under the circumstances the testimony complained of was not harmful to the plaintiff.

[7] The court permitted certain of defendants' witnesses to express their opinion that the drainage easements would result in an increased flow of water onto certain portions of the remaining land and would lessen its value. The plaintiff assigns this as error. The drainage easements acquired by the plaintiff are considerably larger than the farm ditches which served the property before the taking. The size of the easements and the fact the flow of water onto remaining portions of the property would be increased was competent evidence and could be considered by the jury as elements of damage. It was proper for qualified witnesses to express their opinion as to the effect of these elements on the value of the remaining property. "In condemnation proceedings our decisions are to the effect that damages are to be awarded to compensate for loss sustained

by the landowner. . . . 'The compensation must be full and complete and include everything which affects the value of the property and in relation to the entire property affected.' *Abernathy v. R. R.,* 150 N.C. 97, 63 S.E. 180." *Highway Commission v. Phillips,* 267 N.C. 369, 374, 148 S.E. 2d 282.

[8, 9]    The plaintiff's assignments of error numbers 4 and 5 relate in part to admission of testimony on redirect examination which tended to explain certain testimony elicited on cross-examination. The defendants' witness Williamson admitted on cross-examination that certain property adjoining the condemned property had not been developed for residential use since the taking of defendants' property on 3 June 1963. He was permitted to explain on redirect examination that this property had no access whatsoever to any public road. Also, another witness testified on cross-examination that prior to 1963 the adjoining property had not been available for residential development. On redirect examination he explained that he had reached this conclusion after unsuccessfully trying to purchase the property for residential development. In each instance the question and the response tended to explain and to clarify matters raised by the plaintiff on cross-examination. As was once observed, "[t]he purpose of redirect examination is to uncross matter that has been crossed up on cross-examination." See Stansbury, N.C. Evidence 2d, p. 73 n. 91; also, *State v. Oxendine,* 224 N.C. 825, 32 S.E. 2d 648. This evidence was further competent to rebut the plaintiff's contention that the highest and best use of defendants' property was not for residential purposes as evidenced by the fact that no residential building had occurred on the adjoining property since the date of the taking.

Plaintiff's further exceptions encompassed by its fourth assignment of error attack the admission of evidence that no direct access remained to No. 74 from the defendants' property after the taking. Also challenged is the court's charge to the jury that in arriving at the fair market value of the property immediately after the taking, defendants' evidence that their easement of access to Highway 74 had been substantially interferred with could be considered. These exceptions present for decision the following question: In determining the value of their land remaining after the taking, are the defendants entitled to compensation for the diminution in the value thereof, if any, caused by the fact that they now have no direct access to No. 74?

[10]    "At common law the owner of land abutting a highway, while not entitled to access at all points along the boundary between

his land and the highway, has a special right of easement for access purposes, and substantial interference with this free and convenient access to the highway is a 'taking' of a property right for which he may recover just compensation." 3 Strong, N.C. Index 2d, Eminent Domain, § 2, p. 506; *Highway Commission v. Phillips, supra; Abdalla v. Highway Commission,* 261 N.C. 114, 134 S.E. 2d 81; *Hedrick v. Graham,* 245 N.C. 249, 96 S.E. 2d 129.

[11]　The question of what constitutes a taking of a landowner's right to access has been the subject of numerous decisions in this jurisdiction, all to the effect that while a substantial or unreasonable interference with an abutting landowner's access constitutes the taking of a property right, the restriction of his right of entrance to reasonable and proper points so as to protect others who may be using the highway does not constitute a taking. Such reasonable restriction is within the police power of the sovereign and any resulting inconvenience is *damnum absque injuria. Highway Comm. v. Rankin,* 2 N.C. App. 452, 163 S.E. 2d 302; *Highway Commission v. Nuckles,* 271 N.C. 1, 155 S.E. 2d 772; *Highway Commission v. Phillips, supra; Wofford v. Highway Commission,* 263 N.C. 677, 140 S.E. 2d 376, *cert. denied,* 382 U.S. 822; *Highway Commission v. Farmers Market,* 263 N.C. 622, 139 S.E. 2d 904; *Snow v. Highway Commission,* 262 N.C. 169, 136 S.E. 2d 678; *Moses v. Highway Commission,* 261 N.C. 316, 134 S.E. 2d 664, *cert. denied,* 379 U.S. 930; *Barnes v. Highway Commission,* 257 N.C. 507, 126 S.E. 2d 732.

For example, a landowner is entitled to no compensation for the restriction of access where he is provided with a freely accessable service road connecting with the highway on which his property formerly abutted. *Highway Comm. v. Rankin, supra; Highway Commission v. Nuckles, supra; Moses v. Highway Commission, supra.* Likewise, the construction of a median strip so as to limit landowners' ingress and egress to lanes for southbound travel when he formerly had direct access to both the north and southbound lanes has been held to be a valid traffic regulation adopted by the Highway Commission in the exercise of the police power vested in it by statutes. Injury, if any, caused thereby is not compensable. *Barnes v. Highway Commission, supra.*

When a road or street is closed or abandoned so as to leave the landowner's property on a *cul-de-sac* and increase the distance one must travel to reach points in one direction, such inconvenience is not compensable. *Wofford v. Highway Commission, supra; Snow v. Highway Commission, supra.* In the *Wofford* case Moore, J., speaking for the court at 680, stated as follows:

"The landowner has an easement consisting of the right of reasonable access to the particular highway on which his land abuts. He has no constitutional right to have anyone pass by his premises at all; highways are built and maintained for public necessity, convenience and safety in travel and not for the enhancement of property along the route. An abutting landowner is not entitled to compensation because of circuity of travel to and from his property; such inconvenience is held to be no different in kind, but merely in degree, from that sustained by the general public, and is *damnum absque injuria*."

The principle quoted above does not extend to a situation where the closing of a road, even though private in nature, cuts off the landowner's access to *any* public road. "To completely cut off one's access over a private way or neighborhood road to the nearest public road, without providing other reasonable access to a public road, may diminish the value of the land involved to the same extent as if access was denied to a public highway abutting the premises." *Highway Commission v. Phillips, supra,* at 371.

A landowner is entitled to compensation where there is a complete denial of access even if such access did not previously exist because the road in question is a newly constructed limited access facility. G.S. 136-89.52; *Highway Comm. v. Realty Corp.,* 4 N.C. App. 215, 166 S.E. 2d 469; *Highway Commission v. Gasperson,* 268 N.C. 453, 150 S.E. 2d 860. Also, compensation must be paid where under a right-of-way agreement the owner retains the right of access at a particular point and is subsequently refused access at that point. *Realty Co. v. Highway Comm.,* 1 N.C. App. 82, 160 S.E. 2d 83, *cert. denied,* 274 N.C. 185; *Petroleum Marketers v. Highway Commission,* 269 N.C. 411, 152 S.E. 2d 508; *Kirkman v. Highway Commission,* 257 N.C. 428, 126 S.E. 2d 107; *Williams v. Highway Commission,* 252 N.C. 772, 114 S.E. 2d 782.

[12, 13]   It is clear under the principles of the cases cited herein that when access has been interferred with by the state the question involved is one of "degree." If the interference is not substantial and if reasonable means of ingress and egress remains or is provided, there has been a legitimate exercise of the police power. If the interference is substantial and no reasonable means of ingress and egress remains or is provided, there has been a taking of a property right under the power of eminent domain. Applying these principles we hold as a matter of law that the restriction of the defendants' access to No. 74 in this case was a taking of a property right for which compensation must be paid.

It is undisputed that after the completion of the project both sides of No. 74 fronting on defendants' property were fenced and no service roads parallel to No. 74 were constructed. In its complaint and declaration of taking the plaintiff sought the right to control access. It now has that right under judgment, and it has been exercised so as to totally eliminate defendants' prior right of unlimited direct access onto No. 74.

[13]     The plaintiff contends that reasonable access is still afforded through the use of RPR 1321 which intersects No. 74 west of defendants' property. Defendants still have access onto RPR 1321 for approximately 420 feet north of No. 74 and approximately 1980 feet on the south. Under the circumstances of this case, the defendants' right of access to No. 74 has nevertheless been interferred with substantially. The defendants' evidence was that the highest and best use for the property before the taking was for residential development. With access on both sides of No. 74 now controlled, a street up to 1858 feet in length would have to be constructed north of No. 74 for that tract to be developed. A similar street would have to be constructed on the south side to "open-up" the eastern portion of that tract. In *Highway Commission v. Farmers Market, supra,* a railroad intersected the defendant's property dividing it into two tracts. The southern tract had full access to U.S. Highway No. 1-A. The northern tract had access to 1-A through the use of Race Track Road. A non-access Belt-Line Road was constructed along Race Track Road depriving the defendant of access to No. 1-A from its northern tract unless an expensive 3000 foot road was constructed. The Supreme Court held that though the southern portion of defendant's property was unaffected and still had unlimited access to No. 1-A, defendant's access had nevertheless been substantially diminished. Compensation for the taking of this property right was allowed. The effect on the defendants here is not unlike that suffered by Farmers Market.

The plaintiff's assignment of error as to the admission of evidence concerning the taking of defendants' right of access to No. 74 and the court's charge relating thereto is overruled.

[14, 15]     Plaintiff's two remaining assignments of error are also overruled. It was not incumbent upon the court, absent a request, to instruct the jury that an heir to the property in question was an interested witness, this being a subordinate feature of the case. 2 McIntosh, N.C. Practice 2d, § 1513. The plaintiff's motion to set aside the verdict involved no question of law or legal inference and was addressed to the sound discretion of the trial court. No abuse

of discretion has been shown and the court's denial of the motion is consequently not subject to review. *Pruitt v. Ray,* 230 N.C. 322, 52 S.E. 2d 876.

In the entire trial we find

No error.

CAMPBELL and PARKER, JJ., concur.