State v. Sneed

STATE OF NORTH CAROLINA v. DOROTHY P. SNEED

No. 7321SC793

(Filed 6 February 1974)

1. Criminal Law § 169— evidence of threats made to co-conspirator — no connection with defendant — harmless error

In a prosecution for conspiracy to commit safecracking, re-direct examination of a co-conspirator with respect to threats he received while in prison, though improper since there was no connection made between defendant and the threats, was not so prejudicial to defendant as to require a new trial.

2. Criminal Law § 169— statements by co-conspirator to police — admission harmless error

Even if the trial court erred in allowing a co-conspirator to testify that he had given statements to the police concerning his participation in other crimes and some of the statements did not involve defendant, such error was not prejudicial to defendant.

APPEAL by defendant from *Wood, Judge,* 7 May 1973 Session of FORSYTH County Superior Court.

The defendant, Dorothy P. Sneed (Sneed), was charged with two separate bills of indictment alleging conspiracy to commit safecracking and being an accessory before the fact to the felony of safecracking. The cases were consolidated, and

pleas of not guilty were entered. The jury returned a verdict of guilty as to each offense. From an active sentence pronounced thereon, the defendant gave notice of appeal.

The State's evidence showed that on 6 June 1971 the door to the warehouse of Tuttle Lumber Company had been forced open and that another door between the warehouse and the showroom had likewise been forced open. A safe was located in the showroom, and the door had been blown off the safe by means of some explosive. A considerable amount of debis was scattered about, and the immediate area around the safe was in shambles. Approximately three hundred dollars had been taken from the safe.

The co-conspirators—Darrell Eugene Hicks (Hicks) and Marvin David Pennell (Pennell)—testified at the trial. Pennell testified that he was serving a sentence for safecracking. He further testified that he had known the defendant for four years. He stated that he and Hicks were at Sneed's house the morning of the crime and were given some walkie-talkies to use in the safecracking at Tuttle Lumber Company. The plans were made in Sneed's bedroom between Sneed, Pennell, and Hicks. The dynamite was wired and taped with tape Sneed got from the kitchen. Sneed agreed to park her car in a parking lot in front of Tuttle Lumber Company and report on the walkie-talkie if police were patrolling the street. They spent about an hour planning and preparing for the crime.

Sneed left first, followed by Hicks and Pennell. They stopped behind a nearby barn and could see Sneed parked across the street from the lumber company. They attempted to call her on the walkie-talkie but could only hear static. They proceeded to break and enter the building and prepared for the explosion. They checked several times from the window and Sneed was still there. She drove away before the explosion, but Hicks and Pennell continued as planned. They used a hammer and knocked the handle off the safe, leaving a hole an inch deep. They packed the hole with dynamite and wired the cap. They ignited the dynamite, and the safe door was blown open. Some of Sneed's friends had shown Hicks how to use dynamite. The money from the safe was divided between the three participants. Sneed was given one hundred dollars.

On cross-examination Pennell testified that he had committed other offenses and had other indictments pending. He

State v. Sneed

stated that no law enforcement officer had made any promise nor had the solicitor promised to *nol pros* or assist in the other cases. He stated that the solicitor had said he would try to help out with the prison conditions.

On re-direct examination, the following ensued:

The Solicitor: What were your prison conditions that you were complaining to me about?

Pennell: Well, problems I was having, and so forth, all different problems and everything.

The Solicitor: Well, David, I want you to tell His Honor and the gentlemen of the jury exactly what you told me your problems were out there.

Pennell: Well, I had a couple of threats about Dot Sneed.

Defense Counsel: Objection, Your Honor.

The Court: Overruled. You asked him about it.

The Solicitor: Go ahead.

Pennell: I had a couple of threats about Dot Sneed.

The Solicitor: What about? About testifying?

Pennell: Yes sir. And one, this man knowed (sic) her, and he threatened me. I don't know if Dot put him up to it or what. I think she did but I couldn't say because I don't know.

Darrell Eugene Hicks (Hicks), the other conspirator, testified substantially the same as Pennell. He testified that he and Pennell stole the dynamite from a construction site and took it to Sneed's house to keep. His account of the robbery and the defendant's participation did not differ from that of Pennell. He also testified that he had given statements to the police of other crimes in which he was involved and that some of them did not include Dot Sneed.

*Attorney General Robert Morgan, by Assistant Attorney General Parks H. Icenhour for the State.*

*Henry C. Frenck for the defendant.*

CARSON, Judge.

[1]   The defendant's first assignment of error relates to the re-direct examination of the co-conspirator Pennell and his testimony concerning the threats he received. Re-direct examination may be used to remove any obscurity or uncertainty adduced by the cross-examination. *Highway Comm. v. Yarborough,* 6 N.C. App. 294, 170 S.E. 2d 159 (1969) ; 1 Stansbury, N. C. Evidence (Brandis Revision), § 36. However, in the instant case, it appears to go beyond merely explaining the facts elicited on cross-examination. The matters concerning the threats would have been improper on direct examination since there was no connection shown with the defendant. *State v. Brantley,* 84 N.C. 766 (1881) ; 1 Stansbury, N. C. Evidence (Brandis Revision), §§ 77 & 78. The witness' reference to prison conditions did not remove the incompetence of the testimony concerning the threats. However, the defendant also has the burden of showing the objectionable matter to be prejudicial. *State v. Brown,* 271 N.C. 250, 156 S.E. 2d 272 (1967) ; *State v. Bailey,* 12 N.C. App. 280, 182 S.E. 2d 881 (1971). Here there was detailed testimony from the two co-conspirators concerning the defendant's participation. It is most unlikely that the existence of the threats would make the testimony of the witnesses any more or less believable. While the admission of the threats may have been erroneous, we hold that any error was harmless considering all the testimony.

[2]   The defendant also contends that error was committed by allowing the co-conspirator Hicks to testify that he had given statements to the police concerning his participation in other crimes and that some of these statements did not involve Sneed. Again, considering the testimony as a whole, it is difficult to perceive how this would be prejudicial even if erroneous. Not only must the defendant show error to warrant a new trial; he must also show the error to be prejudicial to the defendant and that a different result would likely have ensued except for the error. *State v. Woolard,* 260 N.C. 133, 132 S.E. 2d 364 (1963). If there is no reasonable possibility that the error complained of might have contributed to the conviction, the error will be held harmless. *State v. Humphrey,* 283 N.C. 570, 196 S.E. 2d 516 (1973) ; *State v. Thacker,* 281 N.C. 447, 189 S.E. 2d 145 (1972).

In the instant case there is an abundance of evidence to sustain the conviction. The jury clearly believed the testimony

of the co-conspirators. We hold that the defendant had a fair and impartial trial free from prejudicial error.

No error.

Chief Judge BROCK and Judge MORRIS concur.