DEPARTMENT OF TRANSPORTATION, PLAINTIFF v. BETTY M. FOX, IN-DIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF JERRY HASSEL FOX; CAROL F. LONG AND HUSBAND, JAMES A. LONG, III; VIRGINIA ELOISE CLARK AND HUSBAND, ROBERT THURMAN CLARK, DEFENDANTS

No. 899SC651

(Filed 3 April 1990)

1. **Eminent Domain § 6.9 (NCI3d) — cross-examination of appraisal witness — questions about property values in vicinity**

   In a condemnation action to acquire property for expansion of a two-lane highway to four lanes, defendants' counsel committed reversible error where, during cross-examination of plaintiff's expert appraisal witness, counsel referred to the value of three noncomparable properties fifteen times in his questions, and it was obvious from the transcript that counsel's primary intent was to allow the jury to hear the values of those tracts, not to impeach the credibility of plaintiff's witness.

   **Am Jur 2d, Eminent Domain § 429.**

2. **Eminent Domain § 5.8 (NCI3d)— construction of median strip— no compensation**

Defendants were not entitled to any compensation resulting from the construction of a median strip in front of their remaining property as part of a project to expand a two-lane highway to four lanes.

**Am Jur 2d, Eminent Domain § 210.**

Judge WELLS concurring in the result.

Chief Judge HEDRICK dissenting.

APPEAL by plaintiff from judgment entered by *Judge Milton Read, Jr.*, in PERSON County Superior Court. Heard in the Court of Appeals 12 December 1989.

This appeal arises out of a condemnation action filed 6 August 1986 in which the plaintiff Department of Transportation (DOT) condemned 5.02 acres of new right-of-way and .01 acre of temporary drainage easement across the property of defendants Betty Fox and others for the four-laning of US 15-501, starting at a point just north of the city limits of Roxboro, North Carolina. The property taken by DOT was part of a 125-acre tract owned by the families of the defendants. The portion condemned consisted of a ninety-one foot strip bordering the highway's western side for a distance of 2,345.81 feet. The case went to trial on 23 January 1989, and after hearing the evidence presented, a jury awarded defendants $150,000 plus interest for the appropriation. Plaintiff appealed.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Thomas B. Wood, for the State, appellant.*

*Maxwell, Martin, Freeman & Beason, by James B. Maxwell and John C. Martin, for defendant appellees.*

ARNOLD, Judge.

Appellant makes a number of assignments of error, but we examine only two.

[1] The State contends it was prejudicial error for the trial court to allow cross-examination of the State's appraisal witness concerning his knowledge of the sale prices of several noncomparable properties located in the area. This cross-examination was an attempt to impeach the witness by testing his knowledge of nearby property.

## DEPT. OF TRANSPORTATION v. FOX

[98 N.C. App. 61 (1990)]

Larry Bowes, a licensed auctioneer and insurance agent, testified for DOT that the appropriation of appellee's five acres had increased the value of their remaining property by more than $500,000. On cross-examination, the following exchanges occurred between Mr. Maxwell, defendants' counsel, and Mr. Bowes:

Q: (Mr. Maxwell) . . . Now, are you aware Mr. Whitfield bought that particular piece of property for the Express Mart for about five thousand dollars an acre—

HARRIS (plaintiff's counsel): Objection.

MAXWELL: I'm asking if he's aware of it.

COURT: Go ahead and finish your question.

Q: Okay. And, that he actually sold it in 1986 for sixty-five thousand dollars an acre?

COURT: You may answer that question.

A: I was aware that he bought it, but not of the figures he got for it.

Q: Well, let's put it this way. Have you had a chance in preparation for this to actually check the sale of a property that was about one mile from the subject property we're talking about, the Fox property. The Express Mart, purchased in 1987 for ninety-seven thousand dollars—

HARRIS: Objection. Objection, Your Honor.

COURT: He's just asking if he's aware of it.

HARRIS: Well, I'm objecting to him giving the figures.

COURT: Objection is overruled.

Q: And, if they sold that for ninety-seven thousand dollars according to the tax stamps downstairs, for sixty-four thousand dollars per acre—

HARRIS: Objection.

COURT: Overruled.

Q: —are you aware of that?

A: No, sir. I wasn't aware of that figure. . . . .

Q: Okay. And, you mentioned Neb King's property in your testimony, did you not? That particular piece of property is about one point two miles from this property. It's between, closer to the Fox property than Mr. Chambers' property and a little bit further than the Express Mart, is it not?

A: Yes, sir.

Q: Okay. Were you aware that that particular piece of property sold for fifty-two thousand—

HARRIS: We object to the figures, Your Honor.

COURT: If he is aware, he may answer.

Q: Were you aware that that particular piece of property sold for fifty-two thousand dollars?

A: I was aware of that particular property.

Q: And, based on what you know about the properties, you're not surprised, or wouldn't be surprised, that Mr. Chambers paid eighty-five thousand dollars for—

HARRIS: Objection.

COURT: Well, sustained as to that.

Q: Okay. You used that as a comparable. You know that one sold for a hundred and twenty-five thousand dollars?

A: Yes, sir.

Q: Which is eighty-five thousand dollars an acre?

A: Yes, sir. I have on there that average.

Q: Okay. And, what do you know about Mr. Chambers' property selling for eighty-five thousand dollars an acre?

HARRIS: Objection.

Q: The Neb King selling for fifty-two thousand dollars?

HARRIS: Objection.

Q: Is the Express Mart selling for sixty-four thousand dollars an acre—

HARRIS: Objection.

Q: —closer to this property?

COURT: The three objections are overruled.

In *Power Co. v. Winebarger*, 300 N.C. 57, 265 S.E.2d 227 (1980), the Supreme Court, in a similar situation, ordered a new trial for the defendants when improper references were made to values and sales prices of property not comparable to the land at issue. During cross-examination in *Winebarger* of defendants' value experts, plaintiff's counsel continually alluded to alleged sales prices of parcels of land not involved in the case. *Id.* at 59-61, 265 S.E.2d at 229-30.

As in the case before us, there was no showing in *Winebarger* that any of the properties referred to in the questions were comparable to defendants' land. Generally, if a proper foundation is laid showing similarity in nature, location, and condition to the land involved, the price paid at a voluntary sale of land is admissible as substantive evidence of the value of the property in question. 1 Brandis on North Carolina Evidence § 100 (3d ed. 1988); *Winebarger*, at 62, 265 S.E.2d at 230. Whether two properties are sufficiently similar is a question to be determined by the trial judge. *Id.* at 65, 265 S.E.2d at 232. "Conversely, where a particular property is markedly dissimilar to the property at issue, the sales price of the former may not be introduced or alluded to in any manner which suggests to the jury that it has a bearing on the estimation of the value of the latter." *Id.* at 66, 265 S.E.2d at 232.

If a witness has offered testimony concerning the value of property directly in issue, that witness' knowledge of the values and sales prices of dissimilar properties in the area may be cross-examined to impeach his credibility and expertise. *Id.*

> Under these limited impeachment circumstances, however, it is improper for the cross-examiner to refer to specific values or prices of noncomparable properties *in his questions to the witness* (citation omitted). Moreover, if the witness responds that he does not know or remember the value or price of the property asked about, the impeachment purpose of the cross-examination is satisfied and the inquiry as to that property is exhausted (citation omitted). If, on the other hand, the witness asserts his knowledge on cross-examination of a particular value or sales price of noncomparable property, he may be asked to state that value or price only when the trial judge

determines in his discretion that the impeachment value of a specific answer outweighs the possibility of confusing the jury with collateral issues (emphasis added).

*Id.* at 66, 265 S.E.2d at 232-33.

Applying *Winebarger* to the case before us, it is clear that appellees' counsel committed reversible error. During his cross-examination of Mr. Bowes, counsel referred to the value of three noncomparable properties fifteen times *in his questions*. It is obvious from the transcript that counsel's primary intent was to allow the jury to hear the values of these tracts, not to impeach the credibility of State's witness. Counsel repeatedly stated the prices in his questions, sometimes reciting figures concerning one piece of property three times in one question. He would state the figure two different ways in the same question—by the total sales price of the tract and then by the price per acre.

This Court has held that *one* reference to the sales price of a noncomparable piece of property is an error requiring a new trial. In *Bd. of Transportation v. Chewning*, 50 N.C. App. 670, 274 S.E.2d 902, *disc. rev. denied*, 303 N.C. 180, 280 S.E.2d 453 (1981), defendants called a witness to testify concerning the value of their property, which was being appropriated by the State. On cross-examination, the witness testified that he had purchased a small parcel of property in the area. The State's attorney asked him the price of the property. *Id.* at 671, 274 S.E.2d at 903. No showing had been made that the two properties were comparable. The question was intended to impeach the witness and probe his knowledge of land values in the area. On appeal, Judge Martin ordered a new trial because in allowing the witness to state the sales price, the trial judge failed to confine the cross-examination to matters relevant to the limited impeachment purposes. *Id.* at 673, 274 S.E.2d at 905.

In the present case, State's witness apparently knew the sales price of one tract, the Chambers property. When a witness states that he knows the price, his answer *may* be relevant even for the purposes of impeachment. *Winebarger*, at 66, 265 S.E.2d at 232-33. Nevertheless, counsel's questions concerning the Chambers property were also in error because *any* reference to prices in the cross-examination questions is improper. *Id.* at 66, 265 S.E.2d at 232. It is the witness who should state the price, if he knows it, and the probative value of allowing the admission of such evidence

will outweigh the possibility of confusing the jury only in a "rare case." *Id.*

[2] Finally, we also point out that appellees are not entitled to any compensation resulting from the construction of a median strip in front of their remaining property as part of the four-lane expansion project. In *Highway Comm. v. Yarborough*, 6 N.C. App. 294, 170 S.E.2d 159 (1969), Judge Graham, writing for this Court, said:

> [T]he construction of a median strip so as to limit landowners' ingress and egress to lanes for southbound travel when he formerly had direct access to both the north and southbound lanes has been held to be a valid exercise of the police power vested in it by statutes. Injury, if any, caused thereby is not compensable.

*Id.* at 301, 170 S.E.2d at 164-65; *Barnes v. Highway Commission,* 257 N.C. 507, 126 S.E.2d 732 (1962).

For the reasons set forth above, appellant is entitled to a

New trial.

Judge WELLS concurs in the result.

Chief Judge HEDRICK dissents.

Judge WELLS concurring in the result.

I wish to put an emphasis on this case which is somewhat different from the majority.

In cases such as this, the measure of damages for the portion of land condemned and taken is the difference between the fair market value of the entire tract before the taking and the fair market value of the tract remaining after the taking. N.C. Gen. Stat. § 136-112. In this case, defendants attempted to show by their witnesses — Gentry and Smith — that the "after" value of their remaining land was substantially less than the "before" value. (Gentry, $226,651.00 less; Smith, $301,120.00 less.) Plaintiff attempted to show through the witness Bowes that the "after" value was substantially more than the "before" value, and that therefore defendants had suffered no damages for which they were entitled to compensation.

In their cross-examination of Bowes, defendants simply highlighted that property in the vicinity of defendants' property had gone up in value in recent times. I cannot perceive how this could have prejudiced plaintiff, and I would therefore not agree that the disputed cross-examination of Bowes requires a new trial.

Rather, I conclude that plaintiff is entitled to a new trial on different grounds. In their direct case, defendants' valuation witnesses were allowed to testify that in reaching their "after" value they considered the fact that the presence of a divider median in the new four-lane highway had an adverse impact on the value of defendants' property for commercial purposes, its highest and best use. Under the rules established by our Supreme Court in *Barnes v. Highway Commission*, 257 N.C. 507, 126 S.E.2d 732 (1962), and followed by this Court in *Highway Commission v. Yarborough*, 6 N.C. App. 294, 170 S.E.2d 159 (1969), this was clearly prejudicial error. Both *Barnes* and *Yarborough* plainly held that changes in highway design such as happened here do not entitle the affected landowner to compensation.

This case is not distinguishable from either *Barnes* or *Yarborough*, and on this basis, I am of the opinion that plaintiff is entitled to a new trial.

Chief Judge HEDRICK dissenting.

Assuming errors were made in the trial of this action, as pointed out in the separate opinions of my colleagues, I do not believe the errors were so prejudicial as to require a new trial in this case.