667 S.E.2d 282 (2008)
CITY OF WILSON REDEVELOPMENT COMMISSION, Plaintiff,
v.
Lila Ruth BOYKIN, a/k/a Lila Ruth Proctor, all unknown heirs of Fannie Faison Chester, Jannis Bynum, U.S. Department of Housing and Urban Development, Joseph A. Chester, Jr., and wife, Anne Chester, Pearl Chester McCants, and husband, Walter B. McCants, Sr., India Chester Watkins, and Husband, H. Pierre Watkins, James Arthur Chester, and wife, Norine P. Chester, William Thomas Chester, and wife Veronica A. Chester, Irvin Eugene Chester, and wife, Patsy H. Chester, Fannie E. Chester Alston, and Zelda Chester, as widow and sole heir of William Chester, Defendants.
No. COA08-268.
Court of Appeals of North Carolina.
October 7, 2008.
*284 Rose Rand Attorneys, P.A., by T. Slade Rand, Jr., Wilson, for Plaintiff-Appellant.
Poyner & Spruill, LLP, by Timothy W. Wilson and Jenny M. McKellar, Rocky Mount, for Defendant-Appellees Joseph A. Chester, Jr., and wife Anne Chester; and Lila Ruth Boykin.
Farris & Farris P.A., by Robert A. Farris, Jr., Wilson, for Defendant-Appellee Jannis Bynum.
Connor, Bunn, Rogerson, & Woodard, P.L.L.C., by Misty E. Woodard, Wilson, for Defendant-Appellees Unknown Heirs of Fannie Faison Chester.
ARROWOOD, Judge.
Plaintiff, the City of Wilson Redevelopment Commission for Wilson, North Carolina, appeals from orders entered in connection with a condemnation action filed against Defendant-Appellees. We affirm.
The procedural history of this case is summarized in pertinent part as follows: In 1916 Eliza Boykin was granted a property located at 204 S. Vick Street in Wilson, North Carolina (the subject property). Upon her death, it passed to her children Joseph Faison and Defendant Lila Ruth Boykin. In 1965 Joseph Faison and his wife deeded their undivided half interest in the subject property to Fannie Faison Chester. At Fannie Faison Chester's death, her half interest passed to her three surviving children, Arthur Lee Chester, William Chester, and Joseph Chester, Sr. In 1989 Arthur Chester deeded his interest in the subject property to Jannis Bynum. At the deaths of William Chester and Joseph Chester, Sr., their heirs succeeded to their ownership interests in the property. In 1987 Lila Ruth Boykin executed a power of attorney to Joseph Chester, Jr. At the time of trial, Lila Ruth Boykin possessed a one half undivided interest in the subject property, and the other half interest was divided among the heirs of Fannie Faison Chester and her children, Joseph Chester, Sr., and William Chester.
On 25 April 2005 Plaintiff filed a condemnation complaint, declaration of taking, and notice of action. Plaintiff condemned the subject property as part of an urban redevelopment project, whose aims included the promotion of "public health and welfare" and "the elimination of certain blighted areas in the City of Wilson[.]" The complaint was filed against the following Defendants: Lila Ruth Boykin; Unknown Heirs of Fannie Chester; Joseph Chester, Jr., and wife, Anne Chester (the Chester Defendants); Jannis Bynum; and the U.S. Department of Housing and Urban Development (HUD) (collectively, with later-identified heirs to the subject property, Defendants). Plaintiff estimated $36,260 to be just compensation for the condemnation, and deposited that amount with the Wilson County Superior Court. In an amended complaint filed in July 2005, Plaintiff listed liens on the subject property.
On 25 August 2005 Defendant Bynum filed an answer disputing Plaintiff's estimate of just compensation for the subject property, and filed a crossclaim asserting sole ownership of the subject property by adverse possession and by virtue of the deed from Arthur Chester. HUD answered, claiming a lien on the subject property. In October 2005 an attorney was appointed to represent the interests of unknown heirs of Fannie Faison Chester. In October 2005, the Chester Defendants filed an answer disputing the estimated amount of just compensation. They also answered Bynum's crossclaim, denying her claim of sole ownership and setting out details of the family's history. In August *285 2005 Bynum filed a motion for disbursement of the deposit money. Plaintiff responded and alleged that "there may be question as to ownership of the subject property." The Chester Defendants opposed Bynum's motion.
On 9 May 2006 Plaintiff filed a motion for determination of issues other than just compensation, specifically asking the trial court to resolve the Defendants' "unsettled contentions" as to their respective ownership rights in the subject property. Following a pretrial hearing conducted 11 June 2007, the court denied Plaintiff's motion, and ruled that it would instead conduct a jury trial on the issue of the amount of just compensation, without regard to how the various Defendants might later agree to divide that amount.
On 11 June 2007 Defendant Lila Ruth Boykin filed an answer, joining in and incorporating by reference all pleadings filed by the Chester Defendants. She asserted that Joseph Chester, Jr. held a power of attorney and was her attorney in fact. The same day Plaintiff sought entry of default against Lila Ruth Boykin, and the Wilson County Clerk of Court entered default against Ms. Boykin.
A jury trial was conducted beginning 12 June 2007 to determine the amount of just compensation for condemnation of the subject property. At trial, Plaintiff presented the testimony of Leigh Ann Braswell, Plaintiff's Community Development Administrator. Braswell testified that the purpose of condemnation of the subject property and properties in the same area was "to remove the blighting conditions in the area." She described the neighborhood as one with "very substandard conditions" having "very high crime rates[.]" She considered the subject property to be "blighted and substandard." Plaintiff also presented testimony from Edward Robinson, a real estate appraiser. Robinson testified that he had appraised the fair market value of the subject property at $45,000, and its replacement value at $120,000.
Defendants offered trial testimony from Janiss Bynum. She testified that she had lived on the subject property for seven years, and had undertaken significant renovation, remodeling, and maintenance of the house. Bynum obtained her interest in the property from Arthur Chester, a relative of her father's. Her father and Joseph Chester, Jr., were brothers. Bynum estimated that she spent $30,000 on various repairs, and that the fair market value of the subject property was $85,000.
Defendants also called Leigh Braswell as a witness. She testified that Plaintiff intended to tear down the subject property and replace it with a "green space" as part of a redevelopment project aimed at "acquiring blighted and substandard parcels[.]" She testified Plaintiff had paid $250,000 for an apartment building located in the same redevelopment area.
Joseph Chester, Jr., testified that he was born in 1938 and that the subject property had been in his family for many years. It was passed from his great-grandmother, Eliza Boykin, to his grandmother, Fannie Faison Chester. His father and uncles were born in the house, and Joseph Chester, Jr., had visited the house from the 1940's to the present. He illustrated his testimony with a photograph taken in 1900, depicting Fannie Faison Chester standing in front of the house. Joseph Chester offered other testimony detailing his family tree as pertinent to the subject property. Janiss Bynum was his cousin. He testified that in his opinion the fair market value of the property was $150,000.
Following the presentation of evidence, the jury returned a verdict on 13 June 2007, finding just compensation to be $170,000. On 22 June 2007 Plaintiff filed a motion for a new trial under N.C. Gen.Stat. § 1A-1, Rule 59. Plaintiff asserted that it was entitled to a new trial, on the grounds that the trial court failed to determine the specific ownership interest of all heirs and defendants before trial. Plaintiff also alleged that the verdict was excessive and was the result of prejudicial and improperly admitted evidence.
In November 2006 Plaintiff obtained an entry of default against the siblings of Joseph Chester, Jr., and their spouses; and against Zelda Chester, Arthur Chester's widow. *286 On 11 June 2007 the Chester Defendants filed quitclaim deeds executed in their favor by five siblings of Joseph Chester, Jr, and their spouses, releasing to the Chester Defendants any interest they held in the subject property. On 25 June 2007 the Chester Defendants filed a motion asking the trial court to set aside the defaults entered against these non-answering defendants, and to allow them an extension of time to file an answer. Defendants asserted that, prior to the entry of default these defendants had executed quitclaim deeds in favor of the Chester Defendants. They also contended that default should not have been entered, inasmuch as these defendants were among the unknown heirs of Fannie Faison Chester who were represented by appointed counsel. The trial court did not rule on this motion. The Chester Defendants also filed a motion to set aside the default entered against Lila Ruth Boykin and to deem her answer timely filed; their motion was granted on 12 September 2007. The Defendants accepted remittitur of verdict from $170,000 to $150,000, and on 12 September 2007 judgment in that amount was entered for Defendants. On 16 October 2007 the court denied Plaintiff's motion for a new trial. From the orders entering judgment, setting aside the default entered against Lila Ruth Boykin, and denying its motion for a new trial, Plaintiff timely appeals.
Plaintiff argues first that the court committed reversible error by failing to make a pretrial determination of the competing claims of ownership of the subject property, on the grounds that pretrial "determination of these issues is a mandatory prerequisite to a trial by jury." We disagree.
In the instant case, the condemnees included HUD, which held a lien on the property, and the heirs of Eliza Boykin, who was granted the subject property around 1900. Plaintiff filed a pretrial motion asking the trial court to determine the specific fractional ownership of the various heirs before conducting a trial to determine the fair market value of the subject property. On appeal, Plaintiff asserts that the denial of this motion was reversible error.
Plaintiff filed its condemnation action under N.C. Gen.Stat. § Chapter 40A, "Eminent Domain." N.C. Gen.Stat. § 40A-1 (2007), provides in pertinent part that "the procedures provided by this Chapter shall be the exclusive condemnation procedures to be used in this State by ... all local public condemnors." Because Plaintiff is a local public condemnor, Chapter 40A governs the proceedings at issue. Its motion for pretrial determination of ownership issues was filed under N.C. Gen.Stat. § 40A-47 (2007), which states in relevant part that:
The judge, upon motion and 10 days' notice... shall, either in or out of session, hear and determine any and all issues raised by the pleadings other than the issue of compensation, including, but not limited to, the condemnor's authority to take, questions of necessary and proper parties, title to the land, interest taken, and area taken.
Plaintiff asserts that, as a matter of law, this statute makes it mandatory that all other issues be resolved before a jury trial is conducted on the issue of just compensation. However, the statute neither requires that this determination must always be made before trial, nor otherwise dictates the manner or time for resolution of such issues. Accordingly, we conclude that the statute does not on its face include such a requirement.
We have also considered the cases cited by Plaintiff. In this regard, it is important to keep in mind "the different standards for compensation for condemnees set out in two different statutes.... [C]ompensation [is] determined under N.C.G.S. § 136-112(1)... [if] DOT condemned the property. However, owners of property condemned under N.C.G.S. § 40A [are] entitled to compensation under N.C.G.S. § 40A-64(b), which provides for a compensation system more favorable to condemnees than the system provided for in N.C.G.S. § 136-112(1)." Department of Transp. v. Rowe, 353 N.C. 671, 673-74, 549 S.E.2d 203, 206 (2001). For example, "[t]o recover under G.S. § 136-112(1) the area affected and the area taken must constitute a single tract. Unity of ownership is an important criterion." In that circumstance, "determination *287 of ownership of the area affected [but not taken] is a prerequisite to a determination of just compensation for the area taken." State v. Forehand, 67 N.C.App. 148, 153, 312 S.E.2d 247, 250 (1984) (citing Board of Transportation v. Martin, 296 N.C. 20, 249 S.E.2d 390 (1978)).
However, there is no statutory or common law requirement that competing claims of condemnees always must be determined before trial, even when their resolution has no effect on the amount of just compensation. Under N.C. Gen.Stat. § Chapter 40A, the general rule is that "the measure of compensation for a taking of property is its fair market value." N.C. Gen. Stat. § 40A-64(a) (2007). "The fair market value of a property may be defined as `the price which a willing buyer would pay to purchase the asset on the open market from a willing seller, with neither party being under any compulsion to complete the transaction.'" City of Charlotte v. Hurlahe, 178 N.C.App. 144, 147, 631 S.E.2d 28, 30 (2006) (quoting Carlson v. Carlson, 127 N.C.App. 87, 91, 487 S.E.2d 784, 786 (1997)). On appeal, Plaintiff discusses factors that it contends would affect an individual condemnee's entitlement to share in the compensation award. These factors do not affect the objective determination of the fair market value of the subject property. See BLACK'S LAW DICTIONARY 1587 (8th ed. 2004), defining fair market value as "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction."
Moreover, we note that N.C. Gen.Stat. § 40A-55 (2007), expressly contemplates that the competing claims of condemnees might be decided after determination of the fair market value of a condemned property. The statute provides that:
If there are adverse and conflicting claimants to the deposit made into the court by the condemnor or the additional amount determined as just compensation, on which the judgment is entered in said action, the judge may direct the full amount determined to be paid into said court by the condemnor and may retain said cause for determination of who is entitled to said moneys. The judge may by further order in the cause direct to whom the same shall be paid and may in its discretion order a reference to ascertain the facts on which such determination and order are to be made.
N.C. Gen.Stat. § 40A-55. The North Carolina Supreme Court has held that former N.C. Gen.Stat. § 40-23, which is in all substantive respects the same as N.C. Gen.Stat. § 40A-55, allows for post-trial determination of competing claims:
G.S. § 40-23 refers specifically to "adverse and conflicting claimants."... G.S. § 40-23 contains no mandatory provision as to when or in what manner the respective interests are to be determined.... [W]here there are several interests or estates in a parcel of real estate taken by eminent domain, a proper method of fixing the value of, or damage to, each interest or estate, is to determine the value of, or damage to, the property as a whole, and then to apportion the same among the several owners according to their respective interests or estates[.]
Barnes v. N.C. State Highway Com., 257 N.C. 507, 520, 126 S.E.2d 732, 741-42 (1962) (internal quotation marks and citations omitted). Citing Barnes, the North Carolina Supreme Court later held:
In condemnation proceedings ... a proper method for determining compensation to be paid ... is, first, to determine the value of the property taken, as a whole, and then apportion the award among the several claimants. The taker of the property, thus having its total liability determined, is not affected by or interested in the division of the award by the court.
Charlotte v. Recreation Com., 278 N.C. 26, 32-33, 178 S.E.2d 601, 605-06 (1971) (citing Barnes, 257 N.C. 507, 126 S.E.2d 732) (other citations omitted).
We conclude that the trial court did not err by denying Plaintiff's motion for pretrial determination of the respective ownership interests of the claimants to the subject property. This assignment of error is overruled.
*288 Plaintiff argues next that the trial court committed reversible error by allowing Joseph Chester, Jr., to illustrate his testimony with a single photograph of his grandmother in front of the subject property. We disagree.
At trial, Joseph Chester, Jr., testified without objection that the subject property had been in his family for many years, and had passed from his great-great grandmother to his grandmother. He also testified, again without objection, to the summers he spent there with his grandparents, both as a child and later as a young man. In connection with this testimony, Joseph Chester, Jr., showed the jury a photograph taken in 1900, of his grandmother standing in front of the subject property. In its jury instructions, the trial court cautioned the jury that photographs were to be considered only for illustrative purposes.
"Admission of evidence is `addressed to the sound discretion of the trial court and may be disturbed on appeal only where an abuse of such discretion is clearly shown.' Under an abuse of discretion standard, we defer to the trial court's discretion and will reverse its decision `only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision.'" Gibbs v. Mayo, 162 N.C.App. 549, 561, 591 S.E.2d 905, 913 (2004)(quoting Sloan v. Miller Building Corp., 128 N.C.App. 37, 45, 493 S.E.2d 460, 465 (1997); and White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)).
On appeal Plaintiff argues that admission of the photo for illustrative purposes improperly encouraged the jury to consider the Defendants' sentimental attachment to the subject property. However, at trial Plaintiff made a perfunctory objection, saying only "Your Honor, objection, relevance[.]" Plaintiff did not argue at trial that the photograph was prejudicial to its case, or that it would invite improper considerations by the jury. Accordingly, Plaintiff has waived appellate review of this issue. See N.C.R.App. P. 10(b)(1) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make[.]") See also, e.g., Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjust., 354 N.C. 298, 309, 554 S.E.2d 634, 641 (2001) ("issues and theories of a case not raised below will not be considered on appeal").
Moreover, "`[t]he burden is on the appellant not only to show error, but to show prejudicial error, i.e., that a different result would have likely ensued had the error not occurred. G.S. § 1A-1, Rule 61 [(2005)].'" O'Mara v. Wake Forest Univ. Health Sciences, 184 N.C.App. 428, 440, 646 S.E.2d 400, 407 (2007) (quoting Responsible Citizens v. City of Asheville, 308 N.C. 255, 271, 302 S.E.2d 204, 214 (1983)). Plaintiff fails to articulate how this photo changed the outcome of the trial, beyond a generalized assertion that it "was intended to elicit sentimental value to the Chesters[.]" "`We also observe that, based on our own review of the evidence, it is highly unlikely that this testimony had any significant effect on the jury's verdict.'" Cameron v. Merisel Props., ___ N.C.App. ___, ___, 652 S.E.2d 660, 669 (2007) (quoting O'Mara, 184 N.C.App. at 441, 646 S.E.2d at 407). This assignment of error is overruled.
Plaintiff next argues that the trial court erred by admitting testimony that Plaintiff had paid as much as $250,000 for another property within the geographical area of the redevelopment project. As discussed above, to obtain relief, the appellant "must show `that a different result would have ensued in the absence of the evidence.'" Jackson v. Carland, ___ N.C.App. ___, ___, 665 S.E.2d 553, 556 (2008) (2008) (quoting Ferrell v. Frye, 108 N.C.App. 521, 526, 424 S.E.2d 197, 200 (1993)).
In the instant case, Plaintiff challenges the following exchange:
DEFENSE COUNSEL: Miss Braswell, as part of this project the City of Wilson has bought some of the properties in this neighborhood what you call Triangle II voluntarily; correct?
MS. BRASWELL: Yes, sir.

*289 DEFENSE COUNSEL: And the City of Wilson has paid voluntarily up to $250,000 for some of the
PLAINTIFF'S COUNSEL: Objection, Your Honor. May I approach?
....
THE COURT: Overruled.
DEFENSE COUNSEL: Thank you, judge. Miss Braswell, the City of Wilson has paid willing buyer or willing seller for some of the property in this neighborhood without having to file condemnation cases; correct?
MS. BRASWELL: Correct.
DEFENSE COUNSEL: And the City of Wilson under your oversight has paid up to a quarter of a million dollars for some property in this neighborhood, correct?
MS. BRASWELL: Subject, yes, sir, subject property that you're referring to I believe ... was an 11-unit apartment complex.
DEFENSE COUNSEL: That was blighted and obsolete?
MS. BRASWELL: I wouldn't say that that particular property was blighted or obsolete, but the redevelopment statute provide that at least 2/3 of the property within the area must be blighted or obsolete.
Plaintiff argues on appeal that the "obvious implication" of this dialog was that Plaintiff "voluntarily paid more than five times as much for property similarly situated to defendants' property as it was willing to pay defendants for their property[.]" However, it was undisputed that the subject property was not "similarly situated" to the property discussed by Ms. Braswell.
This challenged testimony informed the jury that, as part of its redevelopment project, Plaintiff had paid $250,000 for an apartment building that Plaintiff did not consider "blighted or obsolete." In stark contrast, it was undisputed that the subject property was a small, single-family home, rather than a well-maintained apartment complex. Ms. Braswell characterized the subject property as "blighted" or "substandard," and described the neighborhood in which the subject property was located as having a "high crime rate" and "substandard conditions." Plaintiff fails to articulate how, in this evidentiary context, information about the price paid for a very different property would be likely to affect the jury's determination of the fair market value of the subject property. This assignment of error is overruled.
Plaintiff argues next that the court erred "by permitting the non-answering defendants to answer after the jury rendered its verdict" and by setting aside the default entered against Lila Ruth Boykin. We disagree.
In June 2006 quitclaim deeds were executed by Defendants Pearl Chester McCants, and husband, Walter B. McCants, Sr.; India Chester Watkins, and husband, H. Pierre Watkins; James Arthur Chester, and wife, Norine P. Chester; William Thomas Chester, and wife Veronica A. Chester; and Irvin Eugene Chester, and wife, Patsy H. Chester, transferring their interest in the subject property to the Chester Defendants. These deeds were not filed until June 2007. "However, North Carolina recognizes that `the registration of deeds is primarily for the protection of purchasers for value and creditors; an unregistered deed is good as between the parties and the fact that it is not registered does not affect the equities between the parties.'" Daniel v. Wray, 158 N.C.App. 161, 171-72, 580 S.E.2d 711, 719 (2003) (quoting Bowden v. Bowden, 264 N.C. 296, 302, 141 S.E.2d 621, 627 (1965); and citing Patterson v. Bryant, 216 N.C. 550, 5 S.E.2d 849 (1939)). We note that the present appeal does not implicate the interests of creditors or subsequent purchasers for value, and conclude that the quitclaim deeds were effective to transfer these Defendants' interests in the subject property to the Chester Defendants.
In July 2006 these Defendants were formally served with notice of the condemnation action, as were Fannie E. Chester Alston, and Zelda Chester, William Chester's widow and heir. Under N.C. Gen.Stat. § 40A-42(b)(1) and (2) (2007), title to the subject property did not vest in Plaintiff immediately upon serving these Defendants with notice of *290 the condemnation action; the statute provides in pertinent part:
(b) When a local public condemnor is acquiring property by condemnation for purposes other than for the purposes listed in subsection (a) above, title to the property taken and the right to possession... shall vest in the condemnor:
(1) Upon the filing of an answer by the owner who requests only that there be a determination of just compensation and who does not challenge the authority of the condemnor to condemn the property; or
(2) Upon the failure of the owner to file an answer within the 120-day time period established by G.S. 40A-46[.]...
"[W]e note that N.C.G.S. § 40A-42 [(2007)] states with precision that title and the right to immediate possession vest in certain specified circumstances, none of which are present in the case sub judice." Dare County Bd. of Educ. v. Sakaria, 127 N.C.App. 585, 591, 492 S.E.2d 369, 373 (1997). In the instant case, it is undisputed that condemnation of the subject property was for a purpose "other than for the purposes listed" in § 40A-42(a). Thus, under N.C. Gen.Stat. § 40A-42(b)(2), title to the subject property vested with Plaintiff "[u]pon the failure of the owner to file an answer within the 120-day time period established by G.S. 40A-46[.]"
N.C. Gen.Stat. § 40A-46 (2007) states that a party "served with a complaint containing a declaration of taking shall have 120 days from the date of service thereof to file answer." The date of service is alleged to be 9 July 2006, so title vested with Plaintiff on or about 6 November 2006. However, by the time these Defendants were served all of them except Fannie E. Chester Alston and Zelda Chester had already transferred their interest in the property to the Chester Defendants. Therefore, default entered against them had no effect on the condemnation action.
Moreover, all of these Defendants, including Fannie E. Chester Alston and Zelda Chester, are among the heirs of Fannie Faison Chester whose identities were unknown when Plaintiff initially filed suit. In October 2005 the trial court appointed an attorney to represent the interests of all "unknown parties." On 14 February 2006 counsel for the unknown heirs filed an answer on their behalf, seeking determination of the amount of just compensation. Consequently, these Defendants were not subject to entry of default.
We note that the trial court never ruled on Defendants' motion to set aside the defaults, which were not set aside. Consequently, the issue of whether the motion should have been granted is not before us. However, for the reasons discussed above, we conclude that default was improperly entered against the above-named Defendants.
We next consider the default entered against Defendant Lila Ruth Boykin on the day that the case was set for trial. After trial, the court granted the Chester Defendants' motion to set aside the default entered against Boykin. The trial court ruled that the Chester Defendants "have shown good cause to set aside the Entry of Default and to have Lila Ruth Boykin's Answer filed on June 11, 2007, deemed as timely filed." On appeal, Plaintiff argues the court committed reversible error in granting Defendant's motion.
The trial court has the general authority to set aside an entry of default in appropriate circumstances. N.C. Gen.Stat. § 40A-46 states that "at any time prior to the entry of the final judgment the judge may, for good cause shown and after notice to the condemnor extend the time for filing answer for 30 days." Additionally, N.C. Gen.Stat. § 1A-1, Rule 55(d) (2007) provides in pertinent part that "[f]or good cause shown the court may set aside an entry of default[.]"
"A trial court's decision to grant or deny a motion to set aside an entry of default and default judgment is discretionary. Absent an abuse of that discretion, this Court will not reverse the trial court's ruling." Basnight Constr. Co. v. Peters & White Constr. Co., 169 N.C.App. 619, 621, 610 S.E.2d 469, 470 (2005) (internal citation omitted). "`A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision.'" N.C. *291 Dep't of Transp. v. Haywood Cty., 360 N.C. 349, 351, 626 S.E.2d 645, 646 (2006) (quoting White, 312 N.C. at 777, 324 S.E.2d at 833). Thus, "determination of whether an adequate basis exists for setting aside the entry of default rests in the sound discretion of the trial judge." Byrd v. Mortenson, 308 N.C. 536, 539, 302 S.E.2d 809, 812 (1983) (citations omitted).
Accordingly, this Court applies an abuse of discretion standard in our review of the trial court's ruling on a motion to set aside entry of default in a condemnation action. For example, in City of Durham v. Woo, 129 N.C.App. 183, 497 S.E.2d 457 (1998), defendants did not file a formal answer, although two of them wrote letters to the city-condemnor, challenging the condemnation. The trial court granted a motion by several defendants to set aside the default entered against them, and this Court upheld the trial court's ruling on appeal:
[T]he trial court's findings and conclusions were substantially equivalent to a finding of good cause and supported the action of the trial court in allowing [Defendants] to file an answer. In doing so, the trial court did not abuse its discretion.
Id. at 188, 497 S.E.2d at 461. And, in City of Charlotte v. Whippoorwill Lake, Inc., 150 N.C.App. 579, 563 S.E.2d 297 (2002), this Court, citing Woo, upheld the trial court's setting aside of entry of default in a condemnation action:
In Woo, the 120-day time period had expired for the defendant to file an answer, but final judgment had not yet been entered against him.... [T]he trial court allowed the defendant a thirty-day extension from the date of its order to answer. The Woo Court held that the trial court properly exercised its discretion under section 40A-46. Here, the trial court stated in its order that "for good cause shown" defendant should be allowed a thirty-day extension for filing an answer. Final judgment had not been entered against defendant. Accordingly, the trial court did not abuse its discretion and we reject this assignment of error.
Id. at 582, 563 S.E.2d at 299.
In the instant case, we conclude that the trial court did not abuse its discretion by granting Defendant's motion to set aside the entry of default against Boykin and deem her answer timely filed.
The record shows the following: In October 2005 the Chester Defendants filed an answer to Bynum's crossclaim, in which they asserted that Joseph Chester, Jr., held a power of attorney for Lila Ruth Boykin. Plaintiff was thus aware that Boykin had given Joseph Chester, Jr., a power of attorney by no later than October 2005, as evidenced by the fact that Plaintiff served notice of the condemnation and an amended answer on Boykin "c/o Joseph Chester, Jr." Plaintiff nonetheless waited until the day of trial to seek entry of default against Boykin. On the same day that Plaintiff sought entry of default, Boykin filed an answer incorporating the pleadings of Joseph Chester, Jr., and asserting that he held a power of attorney on her behalf.
Further, "the trial court's order setting aside the entry of default did not create any additional issues or create prejudice to plaintiff[.]" Emick v. Sunset Beach & Twin Lakes, Inc., 180 N.C.App. 582, 590-91, 638 S.E.2d 490, 496 (2006). In addition, it is undisputed that Lila Ruth Boykin, who held a one-half undivided interest in the subject property, was ninety-seven years old and living in a nursing home at the time of trial.
"`A suit at law is not a children's game, but a serious effort on the part of adult human beings to administer justice[.]'" Harris v. Maready, 311 N.C. 536, 544, 319 S.E.2d 912, 917 (1984) (quoting Wiles v. Welparnel Construction Co., 295 N.C. 81, 84-85, 243 S.E.2d 756, 758 (1978)). Given the factual and procedural history of this case, we cannot find that the trial court abused its discretion by granting Defendant's motion to set aside the default entered against Boykin. This assignment of error is overruled.
Finally, Plaintiff argues that the trial court erred by denying its motion for a new trial. Plaintiff's argument is that it was entitled to a new trial on the basis of the alleged errors raised on appeal. As we have determined *292 that the trial court did not err in these rulings, we necessarily reject Plaintiff's argument. This assignment of error is overruled.
For the reasons discussed above, we conclude that the trial court did not err and that its judgments and orders should be
Affirmed.
Judge BRYANT concurs in the result only.
Judge JACKSON concurs.